D. C. LAIRD AND J. L. HOLT v. J. B. BASS AND J. H. WILLBANKS.

1. TRUSTEES OF CHURCHES, &c.—CORPORATIONS.— After the act of 1845, (Paschal's Dig., art. 483,) conveyances to trustees for the benefit of churches, which were not made in compliance with its terms, were not on that account necessarily ineffectual.

2. SAME.—Conveyances may be made to trustees for the benefit of churches, &c., not incorporated, and provide for a continuance by succession of the trust.

3. PAROL EVIDENCE.—It seems that a parol contract made upon bids, in writing, made in response to written notices, may be proven, although the written notice and bid be not produced.

4. MOTION FOR NEW TRIAL.—See motion and affidavit showing cause requiring new trial.

APPEAL from Smith. Tried below before the Hon. M. H. Bonner.

This is a case where Laird and Holt removed a school-house from land belonging to the Mount Sylvan Baptist Church, of which Bass and Willbanks were the only surviving deacons.

The facts show that the school-house was originally erected by W. P. Martin, by an arrangement with one J. W. Bradshaw, who was an agent or contractor for the State. It was erected by permission, that the neighborhood might have the benefit of a school-house, granted by the Mount Sylvan Baptist Church by an order entered in its church book of proceedings. Laird and Holt claimed that the school-house belonged to them, they having purchased it from Martin. Martin had been partly paid for building the house by the State, and had no lien. This purchase was admitted. They claimed that Martin had the right to sell it by virtue of his contract with Bradshaw, to whom the permission to erect it was given.

At the time of the removal the house was being used as a school-house.

A verdict and judgment were given for the plaintiff for one dollar actual damages and cost.

Defendant moved for a new trial, on the ground of error in the court in excluding testimony offered as to the terms of the contract between Bradshaw and Martin for the erection of the house.

Martin, witness for defendants, testified that "notices were posted by Bradshaw inviting bids for the building of four school-houses, one of which was the house in controversy."

It was then proposed to prove by the witness that he had made a bid in writing, giving in it only the amounts for which he would build each school-house, including that sued for, and that Bradshaw accepted the bid verbally and without any writing, and the contract between Bradshaw and witness for the building was based on the bid, &c. This was excluded as secondary, as was also the testimony of said witness that his contract with Bradshaw, in its details, was verbal, and that it was a part of the contract on which witness had built the house "that the house should be the property of witness, and that no title should pass to said Bradshaw or to any person else until he (witness) should be fully paid."

In support of the motion affidavits were filed. Martin, by affidavit, stated " that before the trial of the said cause, on April 17, 1878, he was applied to by Horace Chilton, Esq., to know if the contract or agreement between him and Brad-- shaw, in reference to the school-house in controversy, was written, and that affiant informed said Chilton that said con-- tract was verbal; that he did not inform Chilton that there was any written notice or bid; that he did not suppose that his bid or the notice constituted the contract, and, therefore, did not say anything to Chilton about them; that Bradshaw verbally accepted the bid which he made, and that all the terms as to the manner of payment and the ownership of the property [the school-house] were verbally agreed upon be-- tween himself and Bradshaw "; that it was verbally agreed in 1872, after the bid was made, between witness and Brad-- shaw, that the title to the school-house should remain in him, (witness,) and that it should be his property until the school-house should be fully paid for. His claim was not one of debt against said school-house, but he was to remain the owner until it was paid for.

Horace Chilton, by affidavit, stated that he was one of the attorneys for Laird and Holt, and on April 17, 1878, before announcement in this case, he applied to said Martin to know if the contract between him and Bradshaw, in reference to

the school-house in controversy, was written or verbal, and that Martin stated to affiant that said contract was verbal, and that the announcement for trial was made on the faith of that statement, and that the first he ever knew that there was any writing between Martin and Bradshaw concerning the matter was when Martin was on the witness stand; that counsel for defendants were surprised on the trial when it was discovered that there was any writing, &c.;  *  *  * that had he known before the trial that the contract was in writing, he could have supplied the necessary testimony, &c.

The motion for new trial was overruled.

*G. W. & Horace Chilton,* for appellants.

I. Under the laws of Texas less than three trustees cannot manage the affairs of a church. (Paschal's Dig., arts. 483–486.)

In this case only two trustees or deacons were acting.

II. All the trustees named in the deed should have joined in the suit for injury to the property.

III. A verbal acceptance of a written bid, and all the terms thereof, may be proved by parol without the production of the writing. (1 Greenl. Ev., 90; Miller *v.* Fitchthorn, 31 Penn., 252; Mobile, &c., *v.* McMillan, 31 Ala., 711; Deshon *v.* Merchants' Ins. Co., 11 Metc., 199; Ingram *v.* Lea, 2 Camp., 521; Livingston *v.* Delafield, 1 Johns., 522.)

IV. Any verbal agreement or change made after a writing, is provable by parol, although the writing formed the basis of such agreement. (3 Johns., 528; 12 Wend., 446.)

V. Where counsel make diligent efforts to inform themselves as to the facts of their cases, and are misled by the testimony given, they should have new a trial. (Delnas *v.* Margo, 25 Tex., 1; Grah. & Wat. on New Trials, 168.)

*Jones & Henry,* for appellees.—Every denomination is allowed by our law to adopt its own method of electing trustees. (Paschal's Dig., art. 384.)

The Baptist Church acts by its deacons. The two plaintiffs in this suit are named as grantees in the deed conveying to the church the land on which the trespass was committed.

GOULD, ASSOCIATE JUSTICE.—It is not our opinion that after the act of 1845, "to authorize the appointment of trustees in certain cases," (Paschal's Dig., art. 483, *et seq.*,) conveyances to trustees for the benefit of churches were ineffectual unless made in compliance with its terms. By such compliance the trustees become a body corporate; without it any person might still convey property to trustees for the use of an unincorporated church, and might provide that on the occurrence of certain events the original trustees, or some of them, should retire and others be substituted. (Lewin on Trusts and Trustees, p. 566; 3 Pet., 99.) We see no reason to doubt that the deed offered in evidence vested in plaintiffs a title sufficient to enable them to maintain their suit.

We are inclined to the opinion that the evidence excluded by the court, as secondary, should have been admitted.

But however that may be, (and as the question will hardly recur, it is not material to decide it,) our opinion is that the affidavits for a new trial show that the defendants' counsel was misled, by the answers of the witness to his inquiries, previous to the trial, into the belief that there was no written evidence of the contract which he sought to prove by that witness. He appears to have used reasonable care and diligence in informing himself of the facts to which the witness would testify, and to have been misled by the mistake of the witness, the result being the exclusion of testimony material to the defense. Our opinion is that the showing made entitled defendants to a new trial. (Delmas *v.* Margo, 25 Tex., 1.) Because the court erred in refusing a new trial, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Justice BONNER did not sit in this case.]