## KIRTLEY et al. v. SPENCER et al.
### (No. 1659.)

(Court of Civil Appeals of Texas. Amarillo. April 28, 1920. Rehearing Denied June 2, 1920.)

**1. Charities ⊕=21(4)—Beneficiaries sufficiently described.**

Testamentary gift to trustees, invested with discretionary powers as to manner of expenditure, to aid a school founded by testator, at which white children between the ages of 6 and 21 shall be admitted free of tuition, preference to be given those who have been in attendance before and those who reside in the district, *held* to sufficiently describe the beneficiaries, and to be good as a gift to a public charity.

**2. Wills ⊕=62—Survivor under joint will estopped to renounce.**

A will of husband and wife, whereby they give their property to trustees for a charity, the trustees to pay half of the income to the survivor for life, *held* a joint and mutual will, estopping the survivor, after the death of the other and the probate of the will and acceptance of benefits under it, from renouncing it.

**3. Judgment ⊕=747(1)—Judgment on disclaimer in action to remove cloud held conclusive of rights.**

Where, after death of husband and probate of will of himself and wife, giving their property to trustees for a charity, subject to payment of half the income to the survivor, she conveyed a half interest therein to a university, and at her request suit was brought by the trustees to remove cloud caused thereby, judgment in their favor, on disclaimer by her, was sufficient to foreclose any right asserted by her contrary to the will.

**4. Judgment ⊕=686—Heirs of party barred.**

Persons claiming interest in land as heirs are barred by judgment foreclosing any interest of the person through whom they claim; they being in privity with her.

**5. Trusts ⊕=173—Suit by trustee held not breach of fiduciary relation.**

·Trustees, to whom husband and wife by their joint and mutual will devised property for a charity, subject to the payment of half the income to the survivor, did not abandon their fiduciary relation to the survivor by bringing suit to remove cloud placed on the title by her deed of an interest in the property, executed after death of the husband and probate of the will.

**6. Judgment ⊕=456(2)—Suit to set aside barred in 4 years.**

A suit, in so far as it is one to set aside a judgment, is barred in 4 years after the judgment was obtained.

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Action in the form of trespass to try title by Rachael E. Kirtley and others against Cora D. Spencer and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

George P. Brown, of McKinney, and Allen G. Fisher and William P. Rooney, both of Chadron, Neb. (John B. Barnes, of Lincoln, Neb., of counsel), for appellants.

Head, Dillard, Smith, Maxey & Head, of Sherman, and Abernathy & Smith, of McKinney, for appellees.

HUFF, C. J. Moses Hubbard and Mary Jane Hubbard resided in Collin county, Tex., and owned the land in controversy in this suit. The property involved in this suit was all community property of Moses Hubbard and Mary Jane Hubbard. On the 5th day of January, 1897, Moses Hubbard and Mary Jane Hubbard, having no children then living or descendants of any children living, after discussion of the disposition to be made of their property, by agreement made a joint and mutual will, by the terms of which all of their property was willed to certain trustees named, which was a perpetual body in trust for the benefit of the school known as "Alla," which Moses Hubbard and Mary Jane Hubbard had established on the land and partly maintained for many years prior to the death of Moses Hubbard. Moses Hubbard departed this life about the 26th day of May, 1906, and the said joint and mutual will of the said Moses Hubbard and Mary Jane Hubbard was duly probated in Collin county, Tex., on the 31st day of July, 1906, and the probate of said will has never been at any time reversed or in any manner modified. Upon the death of Moses Hubbard, in pursuance of said will, the trustees named in the will went into possession of all of the property, and continued in possession of the same from that date until the present time, administering the trust under the terms of said will. On the 20th day of June, 1912, Mary Jane Hubbard, by deed, attempted to convey to the Texas Christian University an undivided one-half -interest in all of the lands involved in this suit, being the same land that Moses Hubbard and Mary Jane Hubbard, under their joint and mutual will, had bequeathed to the trustees hereinabove mentioned. On January 11, 1913, the trustees named in the joint and mutual will of said Moses Hubbard and Mary Jane Hubbard instituted a suit in the district court of Collin county, Tex., against the Texas Christian University and Mary Jane Hubbard, in an action to remove cloud from title to the undivided half interest Mary Jane Hubbard had attempted to convey to the Texas Christian University. In said cause both defendants, Mary Jane Hubbard and the Texas Christian University, filed a disclaimer, and on February 22, 1913, judgment was rendered for plaintiffs, the trustees hereinabove mentioned, against

---

⊕=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Mary Jane Hubbard and the Texas Christian University, removing cloud from title, and in which they recovered the undivided half interest which Mary Jane Hubbard attempted to convey to the Texas Christian University. That judgment became final, and it has never been appealed from or in any way set aside. On the 20th day of February, 1913, the Texas Christian University reconveyed to Mary Jane Hubbard pendente lite the undivided half interest that she had theretofore attempted to convey to the Texas Christian University, which deed was filed for record February 24, 1913. Mary Jane Hubbard departed this life on the 7th day of February, 1914. On the 14th day of May, 1914, the will of Mary Jane Hubbard was duly probated, which, after making numerous bequests, contained a residuary clause, under which residuary clause Cora D. Spencer, one of the defendants herein, took as a legatee all of the estate of Mary Jane Hubbard, not disposed of by special bequest in the said will, and the said will of Mary Jane Hubbard has never in any way been vacated or set aside. Plaintiffs filed this suit in the district court of Collin county, Tex., on the 31st day of August, 1918, in the form of an action of trespass to try title, in which they pleaded their title and seek to have rendered null and void the judgment of the district court of Collin county, Tex., wherein the trustee in said will recovered a judgment against Mary Jane Hubbard and the Texas Christian University. The property involved in this suit plaintiffs claim as heirs at law of Mary Jane Hubbard. The appellees answered by general demurrer, general denial, and plea of not guilty and the statutes of limitations of 2, 3, 4, 5, and 10 years. Upon a trial of the case without the intervention of a jury the court rendered judgment for the appellee for the property involved in the suit. The above statement is taken from the appellee's brief.

Moses Hubbard and Mary Jane Hubbard had a daughter born to them, named Alla, who died without issue. The evidence is sufficient to show that the school was erected on Dr. Hubbard's land, and the school was named Alla as a memorial to his daughter. They had no other children, and Dr. and Mrs. Hubbard discussed the disposition that should be made of their estate after their death. The doctor was inclined to endow a medical hospital, while Mrs. Hubbard desired to endow an orphans' home, but they finally agreed between them that, as they had lived in that neighborhood and made their fortune among those people, they should devise a means of leaving the property to the use and benefit of their neighbors, among whom they had lived. Dr. Hubbard, previous to his death, contributed considerable money to the support of the Alla school, which is in common school district No. 67 of Collin county, and assisted in the employment of teachers and aided the support of

the school in various ways and expressed his desire that the school should become a high school, and, though his pastor apparently sought to induce him to change his will in that particular, he steadfastly adhered to his purpose of leaving his property in trust for the benefit of the school. The will probated recites:

"We, Moses Hubbard and Mary Jane Hubbard, of Collin county, being of sound mind and disposing memory, mindful of the uncertainty of life and the certainty of death, wishing to dispose of the effects which it has pleased Almighty God to bless us with, while we have the strength of mind and bodies so to do, make, publish and declare this to be the last will and testament of us and each of us, hereby revoking all others by us made; and we each direct that as each of us die this instrument shall be probated as the will of such deceased person."

Item second provides:

"It is our desire and each of us, that as each of us dies all the property then owned by us shall descend and vest in the following named persons and their successors in this trust, to wit: J. H. L. C. English, Dr. B. F. Spencer, Dan P. English, F. S. Finley and the superintendent of public instruction of Collin county, who shall taken and hold all of the property, real, personal and mixed, owned by us, at the death of either of us, for the purposes and trusts as hereinafter directed, and vacancies in whose numbers shall be filled as directed."

Item third:

"Upon the death of either of us the trustees shall receive rents, revenues and profits arising from all of said property and shall lend all money and have same well secured or invest same in interest-bearing bonds, rent the land. One half of the net proceeds shall be paid to any person in any manner for any purpose, the survivor may direct. The other half shall be used and paid out in the same manner and for the same purposes as the rents and revenues of the property are herein directed to be paid and appropriated, after the death of both of us, but the survivor has the right, during lifetime, to determine the manner of expenditures; that is whether it should be used in employment of teachers, erection of buildings, purchase of apparatus or other germane uses," etc.

Item 4th provides generally that the trustees, after the death of both, shall take and hold the property and divide it into four funds, specifying the manner of dividing the same. Item fifth:

"Believing that we have the love of God in our hearts for the manifold blessings he has bestowed upon us, and desiring to add to the happiness and improvement of our neighbor, we have founded an institution for the increase and diffusion of knowledge, which we have named Alla, and which shall remain permanently located on the same survey on which it is located, to wit: Wade H. Rattan. And it is our desire that the trustees herein provided for shall use the available fund that has been pro-

vided for in the employment of teachers, the erection of proper and necessary buildings, the purchase of apparatus and other germane uses; and it is our desire that at this institution of learning all children of white race and whose parents are Caucasian and who are over the age of six and under the age of twenty-one, shall be admitted, free of tuition, but in case more apply than the funds on hand justify, then the trustees, in determining who shall be admitted, are requested to give preference to worthy students, who have been in attendance before and those residing in the school district or adjacent thereto. The term 'germane uses' is intended to receive a liberal construction, and to authorize the use of all means proper by the trustees for diffusion of knowledge, but we do not desire a sectarian school taught. The Holy Bible may be used and we pray may be the guide of both instructor and pupils."

Item 6 provides that the trustees shall not have power to sell or alienate the real estate, but that it shall be preserved, and its rents and revenues be applied for the charitable uses, but provides that, if in the judgment of a court of competent jurisdiction, after bona fide trial, it shall determine the land cannot so be held, the trustees upon order of court could sell the land and hold the proceeds as a permanent fund. It is their wish, however, that the land, if it could be done legally, should not be sold.

Item 7 stipulates:

"Confiding in the honor and integrity of J. H. L. C. English, Dr. B. F. Spencer, F. S. Finley, and the person who may be superintendent of public instruction, in Collin county, Texas, we appoint trustees of this fund, and executors of each of our wills."

Item 8 provides for filling vacancies in the trustees, in the case of death, resignation, or otherwise, and that the trustees should be residents of Collin county, reciting that—

"It being our intention to create a perpetual body and to this end the trustees may, if advised it would be better to advance the purposes herein intended, incorporate under the name of Alla. No stock shall be issued."

After Dr. Hubbard's death the trustees took charge of the property, collected the rents, paid the taxes, and looked after the property, turning over to Mrs. Hubbard the portion provided for under the will, leaving to her the direction of the investment or application of the rest of the fund. This situation continued until about the 20th day of June, 1912, when she made a deed to the Texas Christian University. She afterwards addressed a letter to Abernathy & Smith, in which she said:

"I desire the joint and mutual will, executed by me and my deceased husband, which has been duly probated, be carried out in all of its terms."

She authorized them to use her name as a party to a suit either as defendant or in-tervener, or in any way they might think necessary to carry out the terms of the will, and to vest title in the trustees of Alla school, as recorded in the will. They were requested to endeavor to procure judgment vesting all of the property absolutely in the trustees, subject, however, to the interest and right given her under the will; that is vest absolutely in fee simple in the trustees of said Alla school, subject to her right to receive one-half the rents during her lifetime. This letter was signed by her and properly witnessed, and in the suit instituted Mrs. Hubbard filed a disclaimer:

"I, Mrs. Mary Jane Hubbard, one of the defendants in the above styled and numbered cause, come now and disclaim in favor of the plaintiff any and all right, title and interest in and to any of the lands set out and described in plaintiff's petition, except as herein specified, and agree that the judgment may be rendered in favor of plaintiff, as prayed for in their petition, subject to my rights, in the rents, revenues and profits arising from said land."

Judgment was rendered in that case as heretofore stated, recognizing Mrs. Hubbard's right to one-half the rents during her lifetime under the terms of the will. Before her death Mrs. Hubbard made a will, disposing of certain specific property to certain named devisees, having a residuary clause giving all of the remainder of the property, after satisfying the special bequests, to Cora D. Spencer, her niece. The property disposed of by that will specifically appears to be different property to that disposed of by the joint will of herself and husband, and the evidence indicates that it was property accumulated by her after her husband's death.

[1] The first assignment in effect assails the judgment of the trial court on the ground that the will was void and insufficient to vest title in the trustees because the beneficiaries, under the terms of the will, were not specifically designated, and so general that the beneficiaries may include any white child 6 years and under 21 years of age in the world; that the bequest is to an unincorporated institution, and not for a corporation.

The appellants and Cora D. Spencer are heirs at law of Mrs. Hubbard, and would be entitled to recover but for the will. It is our view that the bequest under the will was to a public charity, and may be sustained. We quote from Paschal v. Acklin, 27 Tex. at page 200:

"It cannot be said that the bequest in favor of the poor of Sumner county is too vague and uncertain a description of the beneficiaries to be sustained as a charity in our courts, where the English doctrine of cy pres has never been recognized. Though this point may, at one time, have been a ground of much debate, it is now too firmly settled to admit of question [citing authorities]. It is, also, said that the bequest is void because it was intended to operate in favor of an unincorporated institution; in fact, one that had, at the testator's

death, only an imaginary and ideal existence in his brain. And to sustain this position, the case of Baptist Association v. Hart, 4 Wheat. 1, has been referred to; but this case has, in subsequent decisions in the same high tribunal, been much questioned. But whatever may be its weight as an authority, it is not applicable to the case now before the court. The bequest in that case was directly to the unincorporated association; here it is to trustees, who are capable of taking the estate. In such cases, it has been frequently held that the subsequent incorporation of the beneficiary of the trust, within a reasonable time, is sufficient to support and maintain the bequest [citing authorities]. But without the aid of the subsequent incorporation of the 'Franklin Institute,' the trust was effectual in favor of the beneficiaries pointed out in the will. It was supported by the bequest to trustees, and their execution of it could have been enforced by the beneficiaries in a court of equity [citing authorities]. In Moggridge v. Thackwell, 7 Ves., Jr., 36, it is said: 'When an ascertainable object is designated by the donor, in general or collective terms, as the poor of a given county or parish, or when a person is appointed by him to select a described portion, or kind, or number from a designated class, the chancellor, sitting as judge in equity, will interpose upon the ground of trust.' And in Moore v. Moore, 4 Dana, 354, it is said, 'Whenever the only objection to a bequest is that it is for the benefit of the persons described collectively by some characteristic trait, by which they may be identified, if the bequest is a charity within the statute, and therefore valid, it is as good and available as it would have been at common law, had it been to one competent person in trust for another, identified by the will.'" Bell County v. Alexander, 22 Tex. 351, 73 Am. Dec. 268; Laird v. Bass, 50 Tex. 412; C. J., vol. 11, "Charities," § 58 et seq. p. 338.

"Gifts, for the purpose of advancing the cause of education are universally admitted to be valid as public charitable gifts, both under the statute of Elizabeth and also in the United States, in those states where that statute is expressly or by implication not in force. Hence gifts, in general terms, for education, not specifying in what particular mode they are to be applied, are valid where trustees are also appointed, for in such cases courts of equity will contrive a plan for carrying the gift into practical effect. So a fortiori a gift to found public schools or colleges or for the particular purpose of founding schools, seminaries and colleges, or contributing to the maintenance of those already in operation, to pay salaries of teachers in the public schools, to aid in the education of poor children, to educate colored children, to establish public libraries, to increase the amount of public school funds for the education of young persons in the useful and economic arts, for the education of poor students of the Protestant ministry, or for the Catholic priesthood, or to establish a parish school under the supervision of the authorities of the church, is valid as a charitable gift." Underhill on the Law of Wills, vol. 2, § 814.

The record in this case abundantly shows that Dr. Hubbard founded, or built, the school on his land for the benefit of the children of his neighbors and friends. While the schoolhouse is in a common school district and under the control of the laws of Texas, he and his wife, by their will, evidenced a purpose to aid that school and create a fund to maintain it. In appointing the superintendent of public instruction of the county they manifested a purpose to co-operate with the school authorities of the district and the state. He evidently intended it, in part at least, for the use and aid of pupils under and over the scholastic age, prescribed by law. It was his purpose, manifestly, to give his neighbors a high school at their doors, without the necessity of going from home for better school facilities, and to relieve them in a measure from heavy taxation. Though there was no railroad near the school and it was then in a rural district, it seems to have been his purpose inasmuch as the estate would contribute, to overcome those disadvantages. The trustees were invested with discretionary powers; they could pay teachers, erect or improve buildings, etc., to further its progress. We believe that the beneficiaries were sufficiently pointed out and designated. The trustees appointed were capable of receiving and being vested with the title in trust for the uses specified. The will, therefore, we think valid, and vested Dr. Hubbard's interest in the trustees.

[2] We also believe this will to have been the joint and mutual will of Dr. Hubbard and his wife, and entered into upon their mutual agreement and understanding. After Dr. Hubbard's death and the probate of the will, his wife was estopped from thereafter renouncing the will. The trustees took charge of the estate at the death of Dr. Hubbard, dividing the income, giving the wife her proportional part under the will, and the remainder they held and used as directed by her during her life. She received and accepted the services of the trustees in handling the entire estate. We think she is shown to have elected after the death of her husband to accept under the will, at least there is sufficient evidence to sustain a finding to that effect. On the question of estoppel under a mutual and joint will, and the effect of the death of one without revoking or renouncing the will, by the survivor, before the death of such other party, we cite the case of Larrabee v. Porter, 166 S. W. 395, where the question is ably discussed and many authorities cited and discussed.

[3-6] We think the request by Mrs. Hubbard made of attorneys to institute suit for the land in order to carry out the will of her husband, and the judgment therein, is sufficient to foreclose any right she may have asserted during her life, and the appellants herein, being in privity with her, are barred by the judgment. Neither do we think the trustees abandoned their fiduciary relation

to her in bringing the suit. She had by her deed placed a cloud on the title. They held the title in trust for the named beneficiaries under the will, and if by her act Mrs. Hubbard placed in jeopardy the trust, it was their duty to sue her if necessary. It is asserted the trustees and the attorneys did not explain to her she had a half interest in the property when she filed a disclaimer in the suit. She had undertaken to convey a half interest by her deed to the Texas Christian University. She needed no explanation on that point as to what interest she would take if the will was invalid as to her. If it had not been for the will, upon the death of Dr. Hubbard all the property would have vested in her. If the trustees had informed her she could retain all the estate, they would have violated the trust reposed in them by the will. We find no such abuse of the fiduciary relation or of fraud as would have authorized the trial court to set aside the judgment in favor of the trustees against the Texas Christian University and Mrs. Hubbard. In so far as this was an action to set aside the judgment so rendered, it was barred by the 4-year .statute of limitation. Watson v. Railway Co., 73 S. W. 830; Warren v. Foust, 36 Tex. Civ. App. 59, 81 S. W. 323; Wolf v. Sahm, 55 Tex. Civ. App. 564, 120 S. W. 1114, 121 S. W. 561. The second, third, fourth, fifth, and sixth assignments of error are overruled. We think them without merit.

The judgment will be affirmed.