### STONE v. CITY OF WYLIE et al.
### No. 1181–5509.

Commission of Appeals of Texas, Section B.

Feb. 4, 1931.

Ross M. Scott, of Dallas, Sam Neathery, of Houston, and L. J. Truett, of McKinney, for plaintiffs in error.

R. L. Moulden and Smith & Abernathy, all of McKinney, for defendant in error.

LEDDY, J.

Defendant in error, C. A. Stone, owned a tract of land located near the city of Wylie, consisting of 142 acres, which he used as a homestead for himself and family.

Plaintiff in error the city of Wylie constructed and maintained a sewerage disposal plant on a three-acre tract owned by it adjacent to the above tract of land.

Defendant in error instituted this suit in the district court against plaintiffs in error to abate the operation of such disposal plant on the ground that it constituted a nuisance which interfered with the use and comfortable enjoyment of his premises. There was no allegation or proof that the city was guilty of negligence in the construction or operation of the plant and no damages were sought to be recovered. The action was solely to restrain the city from the further operation of the plant at its present location.

The jury found, in answer to special issues, that the operation of the plant constituted a nuisance which diminished the value ·of defendant in error's premises to the extent of $5,000, and that the removal of the plant by the city would entail a loss upon it of $8,000. It was also found that there was another more eligible location for such a plant, where injuries similar to those suffered by defendant in error would not be inflicted upon others.

Upon these findings, the trial court entered its judgment decreeing that the sewerage disposal plant be abated as a nuisance, and the city was restrained from using or operating the same at its present location, after a period of six months from the date of final judgment.

Plaintiffs in error challenge the power of the trial court to substitute its judgment as to a proper location for its disposal plant for that of the governing body of the city in the absence of pleading and proof that the action of the city officials in so locating said plant was arbitrary or capricious.

If by legislative action the state has vested in the city of Wylie a discretionary power in the selection of a site for the location and operation of a plant of this character, then plaintiffs in error's contention must be sustained, as there was no attempt to plead or prove arbitrary action upon the part of the city authorities.

█ It is announced by Corpus Juris, vol. 43, § 317, p. 306, as a settled rule that courts will not interfere with the exercise of discretionary power upon the part of the governing body of a city except in a clear case of abuse, and that where a discretion is validly vested in a municipal body, or officials, it will be assumed that the duties are properly and lawfully performed.

The clearest statement of the right and jurisdiction of a court to substitute its judgment for that of the governing body of a city in the exercise of a discretionary power expressly vested in it by the Legislature is that made in the well-considered case of Davis v. New York, 8 N. Y. Super. Ct. 451, 497, affirmed 9 N. Y. 263, 59 Am. Dec. 536, wherein the court uses the following language:

"Notwithstanding these observations, the question still remains, has this court, or any court of equity, the power to interfere with the legislative discretion of the Common Council of this city, or of any other municipal corporation? And to this question I at once reply, certainly not, if the term discretion be properly limited and understood; and thus understood, I carry the proposition much further than the counsel who advanced it. This court has no right to interfere with and control the exercise, not merely of the legislative, but of any other discretionary power, that the law has vested in the Corporation of the city; and, hence, I deem it quite immaterial, whether the resolution in favor of Jacob Sharp and his associates be termed a by-law, a grant, or a contract; or whether the power exercised in passing it be termed legislative, judicial, or executive; for if the Corporation had the power of granting, at all, the extraordinary privileges which the resolution confers, the propriety of exercising the power, and, perhaps, even the form of its exercise, rested entirely in its discretion. Nor is this all. A court of equity has no right to interfere with and control, in any case, the exercise of a discretionary power, no matter in whom it may be vested; a corporate body or individuals, the aldermen of a city, the directors of a bank, a trustee, executor, or guardian; and I add, that the

meaning and principle of the rule, and the limitations to which it is subject, are, in all the cases to which it applies, exactly the same. The meaning and principle of the rule are, that the court will not substitute its own judgment for that of the party in whom the discretion is vested, and thus assume to itself a power which the law had given to another; and the limitations to which it is subject, are, that the discretion must be exercised, within its proper limits, for the purposes for which it was given, and from the motives, by which alone those who gave the discretion, intended that its exercise should be governed."

Defendant in error's right to injunctive relief is therefore dependent upon a proper answer to the question: Has the city of Wylie been vested by the lawmaking body of this state with discretionary power in the selection of a site for the operation and maintenance of its sewerage disposal plant?

Prior to 1925 the authority of a city of less than 5,000 inhabitants to locate and operate such a plant was to be found in the provisions of article 1107, Revised Statutes 1925, which reads as follows:

"An incorporated city or town shall have the right of eminent domain to condemn private property for either of the following purposes:

"To construct private mains, laterals and connections and also private property upon which to maintain and to use and occupy as a place for disposition of sewerage in or out of the town or city limits *whenever it be made to appear that the use of any such private property is necessary for successful operation of such sewer system* and when it is also made to appear that such sewer system is beneficial to the public use, health and convenience."

In 1925 the Legislature enacted what is now article 1109b, R. S. 1925, in which cities and towns of less than 5,000 inhabitants were given the power to "appropriate private property for public purposes *whenever the governing authorities shall deem it necessary* and to take any private property within or without the city limits for any of the following purposes, to-wit: * * * sewer systems, storm sewers, sewage disposal plants, drains, filtering beds and emptying grounds for sewer systems."

It will be noted that under the provisions of article 1107, R. S. 1925, there was no attempt to vest authority in the governing body of a city coming within its terms, to take and appropriate private property for any of the purposes indicated except where "the use of any such private property *is necessary for successful operation of such sewer system.*" Under this provision any interested citizen, through court action, might challenge the correctness of the judgment of the city authorities as to the necessity for the location of a sewerage disposal plant at a particular place, and in such case the court would be authorized to review the action of the city and to determine whether in fact it was necessary to the successful operation of the system that the disposal plant be located at the place designated.

■ Under the provisions of article 1109b, the right of a citizen to question the soundness of the judgment of the governing body of a city as to the existing necessity for locating such a plant at a particular place is foreclosed, and the court is without power to review the same except where it be made to appear that such officials acted arbitrarily or capriciously.

We think the provisions of the above statute indicate a clear purpose to change the rule on this subject as the same existed prior to its enactment. By the express terms of the later statute, the governing body of a city of the class named is expressly authorized to take *any private property* for such purpose *"when the governing authorities shall deem it necessary."* Such provision would have no significance whatever unless it be held to vest a discretionary power in a city's governing authorities to locate and maintain a sewerage system, or any necessary part thereof, upon any private property, where such body deemed it necessary for its successful operation.

■ Such being the case, the courts are not authorized to interfere with the exercise of the discretion thus granted, in the absence of pleading and proof, which was wanting in this case, that the action of the city officials in so selecting the particular location for the disposal plant was not the exercise of a fair discretion but was the result of an arbitrary or capricious choice upon their part. City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668, 960.

It appears that all of the cases cited by plaintiff in error to sustain his right to injunctive relief involved action by a city under the old statute and before the adoption of article 1109b in 1925, with the exception of City of Marlin v. Criswell et al., 293 S. W. 910, decided by the Tenth Court of Civil Appeals, in April, 1927. It does not appear from the opinion rendered by that court whether the disposal plant, which was abated by judgment of the court, was constructed prior or subsequent to the adoption of article 1109b, R. S. 1925. Be this as it may, no mention is made in the opinion of either of the statutes we have discussed. The court merely announced that the rule was settled in this character of cases that an injured property owner was entitled to injunctive relief and a number of cases, all decided under

the old statute, were cited as sustaining the conclusion reached.

It is claimed by defendant in error that if the provisions of article 1109b be construed to vest a discretion in the governing body of a city, the same cannot properly be applied in this instance for the reason that it appears the city did not acquire the land upon which it located its sewerage disposal plant through condemnation proceedings, but by private purchase.

██ Article 1108, R. S. 1925, authorizes a city to purchase and own lands for the purpose of operating a sewerage system. This statute must be construed in connection with the provisions of article 1109b,. as these statutes relate to the same subject-matter. The primary object of the passage of these statutes was to authorize cities of the class named to locate, construct, and maintain sewerage systems for the preservation of the health of the inhabitants of the city; hence the authorization in article 1109b to "take any private property" when "the governing authorities shall deem it necessary" should be construed to include that taken either by purchase or through condemnation proceedings. Any other construction would promote and encourage litigation by causing cities to resort to condemnation proceedings when they could acquire, sites for such plants by private purchase. It would be unreasonable to assume that the Legislature contemplated any such result by the enactment of these statutes. No sound reason can be advanced as to why the Legislature would vest a discretion in the city authorities as to the location of a sewerage plant where land was acquired by condemnation and deny such privilege where litigation had been avoided by acquiring the land by private purchase.

██ The judgment of the trial court cannot be sustained upon the theory that there was a taking of defendant in error's property by the city in the operation of its disposal plant. It is doubtful whether defendant in error's pleadings are sufficient to raise this issue. But, if it be conceded that the pleadings are sufficient in this respect, there is no evidence raising such an issue except that given by defendant in error. He being an interested party, his testimony, though not controverted, could do no more than raise the issue for the determination of the jury. Sovereign Camp v. Jackson (Tex. Civ. App.) 138 S. W. 1137; Hobart Nat. Bank v. Fordtran (Tex. Civ. App.) 122 S. W. 413; Wyatt v. Moore (Tex. Civ. App.) 152 S. W. 1133.

██ This issue constituted an affirmative ground for relief, hence the same was waived by defendant in error's failure to request its submission to the jury. Ormsby v. Ratcliff, 117 Tex. 242, 1 S.W.(2d) 1084; Bu-

lin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591; Montrief & Montrief v. Ft. Worth Gas Co. (Tex. Com. App.) 4 S.W.(2d) 964; Dallas Hotel Co. v. Ben S. Davison (Tex. Com. App.) 23 S.W.(2d) 708.

If, upon another trial, under proper pleadings, it be shown that the maintenance of the sewerage disposal plant has resulted in a taking of defendant in error's property, within the purview of our constitutional provision and the decisions of our courts construing same, or if it be determined that the governing body of the city of Wylie acted arbitrarily or capriciously in selecting the present location of its disposal plant, then in either event defendant in error would be entitled to injunctive relief at the hands of the court, as he is entitled to be protected against arbitrary action on the part of the city, and his property cannot be taken without compensation being first provided. Const. art. 1, § 17. If, however, none of his land has been "taken," as that term has been defined by our courts, and the city has not acted arbitrarily in locating its disposal plant, he should be relegated to a recovery of such damages as he may show himself entitled to by reason of the maintenance of the nuisance complained of.

For the reasons indicated, we recommend that the judgment of the Court of Civil Appeals reversing and remanding this cause for another trial be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.