**McWHORTER v. HUMPHREYS et al.**

No. 5852.

Court of Civil Appeals of Texas.
Texarkana.

Nov. 6, 1941.

On Rehearing Feb. 19, 1942.

Further Rehearing Denied March 12, 1942.

R. B. Howell, of Winnsboro, Otis Dunagan, of Gilmer, and Jones & Jones, of Mineola, for appellant.

Florence, Florence & Meredith of Gilmer, for appellees.

WILLIAMS, Justice.

J. C. Humphreys, who will be styled the deceased, in January, 1907, married Mrs. Mattie McWhorter, a widow. Appellant, Merkel D. McWhorter, then a boy of tender years, is her only child. She died March 20, 1935, leaving a will, dated July 3, 1931. Under its terms she bequeathed all her property "to my beloved husband, J. C. Humphreys, and my beloved son, Merkel McWhorter, share and share alike," and named her husband independent executor without bond. On January 1, 1939, deceased married Mrs. Jewell Eitel, a widow. He became seriously ill on January 21, 1939, and died in Pritchett, Upshur County, Texas, June 2, 1939, at an age past sixty-five. He never had any children. Appellant, M. D. McWhorter, filed in the county court an application to probate as the last will of deceased an instrument dated April 13, 1935. Under this instrument deceased bequeathed his entire estate to appellant. It contains a clause, namely, "* * * hereby revoking any other provisions which might have been heretofore made for such disposition" of his estate. Mrs. Jewell Humphreys, the surviving wife of deceased, also filed an application to probate as the last will of deceased, an instrument dated April 5, 1939. Under its terms, after a bequest of a 40-acre farm to his friend and nurse, Luther Dawson, he bequeathed to Jewell Humphreys, if living, and if not, to her two children by a former marriage, all his property of every nature; naming her executor without bond. This will contains a clause, namely, "* * * hereby revoking all wills by me at any time heretofore made." Mrs. Dorothy Shaver and husband answered in each of above causes and pleaded an instrument dated February 19, 1938, as being the last will of deceased, in which he bequeathed to Mrs. Shaver, a niece of his first wife, certain real estate. Above causes were consolidated in the county court. In a trial to that court, in which the issues of undue influence and lack of testamentary capacity were set up, the instrument of April 5, 1939, was admitted to probate. McWhorter and the Shavers duly perfected their appeal to the district court. Subsequently, McWhorter filed suit in the district court against Mrs. Jewell Humphreys, Luther Dawson and the Shavers, which suit later was consolidated in the district court with the consolidated action out of the county court. The Shavers did not appear in the district court. All litigants except the Shavers filed amended pleadings in the consolidated action.

Under above amended pleadings, appellant again sought probate of the 1935 will, and appellees sought probate of the 1939 will. Appellees contended that the 1939 will revoked the 1935 will. Appellant again in his pleading raised the issue of undue influence and lack of testamentary capacity. Pleading further, he alleged that there belonged to the community estate upon his mother's death, real and personal property of the value of $40,-000, except the sum of approximately $5,000 which was the separate estate of his mother; that she left the first above mentioned will, giving its terms; that this will was admitted to probate upon J. C. Humphreys' application for its probate and that he had taken full possession and control of that portion of the estate so devised to him under said will, enjoying and appropriating same to his (J. C. Humphreys') own use; "that on or about the 1st day of June A. D. 1931, the said J. C. Humphreys and his wife, Mrs. Mattie Humphreys entered into an agreement by the terms of which" his mother was to execute a will bequeathing one-half her estate to J. C. Humphreys and the other half to plaintiff; "at said time or prior thereto the said J. C. Humphreys contracted and agreed with his said wife, Mrs. Mattie Humphreys, that if she would execute such a will, that he * * * would execute a will devising and bequeathing his entire interest in the community estate to her, and in the event that the said Mrs. Mattie Humphreys should die before him, * * * then he, * * * would at his death devise and bequeath to plaintiff, * * * all of the property which he, the said J. C. Humphreys, might die seized of." That thereafter, on the 3rd day of July 1931, in pursuance of such

an agreement theretofore made, the said Mrs. Mattie Humphreys did "execute the will with its terms first above set out;

"That he has reason to believe and here charges it to be a fact, that, in pursuance of said agreement, theretofore made, the said J. C. Humphreys, did on or about the last mentioned date execute a will, by the terms of which he devised all of his property to the said Mrs. Mattie Humphreys. * * *

"Plaintiff would further show the Court that in pursuance of said agreement so made between the said J. C. Humphreys and his deceased wife, Mrs. Mattie Humphreys, the said J. C. Humphreys did on the 13th day of April A. D. 1935, execute a valid will by the terms of which he devised and bequeathed to this plaintiff all of the property, real, personal or mixed, wherever situated which he might own at the time of his death. * * *

"Plaintiff says that, by reason of the aforesaid contracts and agreements made and entered into between the said J. C. Humphreys and his deceased wife, Mrs. Mattie Humphreys, and by reason of the fact that the said J. C. Humphreys accepted the benefits of the will of his said wife, and probated said will, and by reason of his use, control and dominion of the property which he acquired under and by reason of said will, that he and those who claim under him, are now estopped from claiming said property under any kind of a will, save and except such an one as he agreed with his wife, Mrs. Humphreys, to execute."

Another count in plaintiff's amended petition alleges a trespass to try title action and describes personal property and various tracts of land.

In addition to a general demurrer and denial, special exceptions, and a plea of not guilty, appellees urged the provisions of Sub. 4 of Art. 3995, R.C.S. of 1925, usually called the statute of fraud, as a bar to the enforcement of the asserted agreements pleaded by plaintiff. Appellees further pleaded a deed and release executed by plaintiff to deceased dated January 19, 1939, which they allege were in full and complete settlement of all claims theretofore asserted by plaintiff against the estate of deceased. To this, plaintiff alleged that at the time of the alleged settlement he knew nothing of the existence of the agreement between deceased and plaintiff's

mother; that a fiduciary relationship then existed between plaintiff and deceased, and it was the latter's duty to inform plaintiff of such agreement theretofore had between his mother and deceased, which the latter failed to do, and by reason of such fraud perpetrated upon him at the time, the asserted release was not binding upon plaintiff so as to include such rights as he would be entitled to under the agreement of deceased and Mrs. Mattie Humphreys. The pleadings of litigants are extremely lengthy, but it is thought that the foregoing is sufficient for an understanding of the issues raised and of the matters to be discussed.

Special issues Nos. 1 to 3, inclusive, inquired of the jury if deceased had testamentary capacity on the respective dates of the wills mentioned in the first paragraph of this opinion. Issues Nos. 4 and 5 made the same inquiry in regard to January 21, 1939, and March 6, 1939, the respective dates of two other wills executed by deceased. Issues Nos. 6 and 7 inquired if the execution of the will of deceased dated April 5, 1939, had been procured by undue influence on the part of appellees. Issue No. 8 reads: "Do you find, from a preponderance of the evidence, that on or about June 1, 1931, J. C. Humphreys and his first wife, Mrs. Mattie Humphreys, entered into an agreement regarding the disposition of their respective property in the event of their deaths? Answer 'yes' or 'no.'" Issue No. 22 reads: "Do you find, from a preponderance of the evidence, that M. D. McWhorter intended by the deed dated the 19th day of January 1939, to release the said J. C. Humphreys from any and all claims that he, the said M. D. McWhorter, might have upon the estate of J. C. Humphreys? Answer 'yes' or 'no.'" To each of the foregoing issues the jury made answer favorable to appellees. Issue No. 21 is immaterial to any issue presented on appeal. Issues Nos. 23 and 24 and findings thereon are evidentiary. Upon above findings the court admitted to probate the will of April 5, 1939. Any relief prayed for by appellant or theretofore sought by the Shavers was denied. McWhorter appeals.

■ It is without controversy that deceased upon his application caused the will of Mrs. Mattie Humphreys to be probated and that he thereby acquired under its terms at least one-half of both the commun-

ity and the separate estate of his wife, which interest he continuously controlled, used and appropriated to his own use. It is without controversy that deceased executed the 1935 will in which he bequeathed his entire estate to appellant. If the execution of the will by Mrs. Mattie Humphreys and the execution of the 1935 will by deceased were made pursuant to a mutual agreement theretofore entered into as alleged by appellant, and deceased took under the will of his first wife as above detailed, then deceased would be estopped and precluded from making testamentary disposition of the property inconsistent with and in disregard of the provisions of his will of 1935. Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395; Wagnon v. Wagnon, Tex. Civ.App., 16 S.W.2d 366; Sherman v. Goodson's Heirs, Tex.Civ.App., 219 S.W. 839; Plemmons v. Pemberton, 346 Mo. 45, 139 S. W.2d 910; Kirtley v. Spencer, Tex.Civ. App., 222 S.W. 328.

In view of the foregoing conclusion, and the jury's findings adversely to appellant upon the issues of undue influence and lack of testamentary capacity, issue No. 8 became a material inquiry, and the burden of proof rested upon appellant to establish the affirmative of such issue. It is to be observed that the jury in response to issue No. 8 found that deceased and Mrs. Mattie Humphreys did not enter into "an agreement regarding the disposition of their property in the event of their deaths." Appellant, under his first three propositions, attacks this finding as being contrary to the uncontradicted and undisputed facts and evidence had in the trial.

Richard Maberry prepared Mrs. Mattie Humphreys' will. This attorney called into his office one D. A. Young, a real estate dealer, and the two witnessed, on July 3, 1931, the execution of Mrs. Mattie Humphreys' will. Deceased was also present in the lawyer's office at the time. Young testified: "Mr. Humphreys told me, says, 'Mr. Young, my wife is making a will to me and Merkel McWhorter of her property. Then I am going to make a will.' And Mrs. Humphreys told me about the same thing, that Mr. Humphreys was going to make her a will. That is about all that was said by any of them. Mrs. Humphreys said, 'I am making him one that day,' and he was going 'in turn to make her one.' He told me he was going to make her a will." Richard Maberry is now dead. The witness Young, according

to his testimony, left for the country immediately after witnessing above will. He did not know if deceased executed a will to his wife that day or if he ever executed a will to his wife. No will from deceased to Mrs. Mattie Humphreys was produced in the trial. Mr. J. P. Maberry, a lawyer associated with his brother, Richard in the legal profession at the time, did not know if Mr. Humphreys ever made a will to his wife.

"Q. Judge, (J. P. Maberry) did Mr. Humphreys ever discuss with you at any time about him and the first Mrs. Humphreys making any wills? A. Mr. Humphreys told me one day that they were coming up to have the will written and asked me which would be better, joint will or separate wills. I told him I preferred a separate will.

"Q. Later on, did Mr. Humphreys mention that matter to you again? A. Well, after he had the will written he told me that Richard wrote a will for him, that he spoke to me about. He said, 'You know I spoke to you about writing a will, and while you were gone Richard wrote the will'—or wills, I never did know which."

R. L. Humphreys, a nephew of deceased, testified that in a conversation about sixteen or eighteen months before Mrs. Mattie Humphreys' death, the latter said to him: "But there is one thing that we did that I am proud of, we taken out joint insurance, $2500 on each one. Then we also made a joint will to Merkel. If I outlive Mr. Humphreys, which I am satisfied I will if he don't change up with these spells, I will bury him and give him a nice burial, then the one that outlives the other is to make Merkel's their home as long as they live. Then the whole thing goes to Merkel—after her death or J. C.'s death." The witness further testified that about a week later in a talk with deceased the latter said, "Yes, Merkel gets all of it, whichever one outlives the other makes Merkel's their home and at their death it all goes to Merkel." In another talk with deceased after Mrs. Humphreys' death, he testified that the deceased said:

"I am going to make Merkel's my home. Want you to see after things down here for me.

"Q. Did he discuss right after her death about what disposition had been made of the property? A. Said he complied with this agreement; that he had

signed up everything to Merkel while he was up there.

"Q. Did you ever see the joint will between Mr. and Mrs. Humphreys? A. No, sir. I asked him—when he was telling me about this joint will—I asked who fixed it up and he said Maberry Brothers."

E. C. Gaston, a merchant who lived near the home of deceased, testified that in a conversation the witness had with the deceased and his wife, Mattie, some four or five years prior to the trial, while the three were dining together:

"Mr. Humphreys remarked, said that, 'We have agreed that if Mrs. Humphreys should die before I do, that I am to have her part of the property as long as I live, then I am to turn it over to Merkel.'

"Q. What did Mrs. Humphreys say, if anything? A. She said the same thing, 'That is the agreement between me and Mr. Humphreys.'

"Q. Answer it again. A. I said, Mr. Humphreys said he and Mrs. Humphreys went into an agreement that should Mrs. Humphreys die before he did, that he was to have all the property until his death; then he agreed to let it go to Merkel."

Sam and Harry McKnight, tenants of deceased, testified that in a conversation they had with deceased about some repairs to be made on a house occupied by them; "We told him about the time we got the place fixed up where we could live, he would die and we would have to move. And he told us that Merkel would take up right where he left off; that he and Merkel's mother had come to an agreement before she died."

Sid Smith, a barber and intimate associate of deceased, testified that during a trip of the two to Longview in 1931, in a conversation about family affairs, the deceased "told me that Merkel would get his stuff when he was dead and when he died everything he had would go to Merkel.

"Q. Ever talk to you on any other occasion? A. No, sir; I believe that was the first and only time he told me him and his wife went into a contract that Merkel would get his property when both were dead and gone."

Fred Simmons, a merchant and florist, testified that in a conversation during a trip with deceased to Winnsboro the latter said: "Told me he and his wife had gone into an agreement before her death that all of his property should revert to Merkel at his death. He told me that he and his wife had made an agreement before her death; that upon her death the property should revert to Merkel." The foregoing are the only witnesses who testified in regard to this issue.

■■ Although reluctant to disturb any jury verdict, it is thought that this finding to No. 8 is without support in the evidence. Briefly reviewing the testimony, which is undisputed, deceased prior to July, 1931, inquired of J. P. Maberry about making a joint will for himself and his wife; thereafter he was present when his wife did make her will and stated that he was going to make her a will; later stated that he had complied with this agreement and had signed up everything to Merkel; that he and Mrs. Mattie Humphreys went into an agreement, that should she die before he did, he was to have all the property until his death and then he agreed to let it go to Merkel; that he and his wife went into a contract that Merkel would get his property when both were dead and gone. The will he made in 1935 shortly after his wife's death, of which appellant was placed in possession, is in keeping with statements of deceased. With the exception of the alleged statements attributed to the McKnights, that they were afraid they would have to move should appellant not prevail in the lawsuit, which statements the McKnights denied making, no attack was made on the motives or credibility of any other witness who testified in regard to the alleged agreement.

Mrs. Mattie Humphreys owned real and personal property in 1907 at the time of her marriage to deceased. Its value was not clearly shown. When deceased failed in the mercantile business in 1911, his schedule in bankruptcy listed a $1,500 note then owed by him to Mrs. Mattie Humphreys. The inventory of her estate, filed by deceased in the probate court after her death in 1935, schedules under "community property," six parcels of land, 673 acres, valued at $6,730, and four acres valued at $100. On the date of Mrs. Mattie Humphreys' death, deceased had on deposit in banks $5,168 which was not inventoried. The probate schedule did not list any personal property, nor did it schedule any separate property of deceased. Through the years 1924 to 1929, deceased loaned to appellant sums of money aggregating $21,973, being secured by liens on real estate of appellant. Appellant paid back by the time

his mother died the sum of $21,208. The amount due with interest on the date of his mother's death was not listed in the probate schedule. Sometime in 1936 appellant executed a $12,000 note to deceased which represented the total balance then due, which was later credited with $3,055. On June 16, 1936, appellant owed deceased $9,165 and subsequently paid $1500. On January 19, 1939, appellant executed to deceased a release, the recitals therein which are material here, read:

"That we, M. D. McWhorter and wife * * * for and in consideration of the sum of Five and No/100 Dollars to us paid by J. C. Humphreys as follows:

"Cash in hand * * * and the further consideration of the cancellation and discharge by the said J. C. Humphreys of his note and deed of trust on the lot No. One in Block No. Nine in the City of Winnsboro, * * * dated June 12th, 1926, * * * as well as all liens or claims whatsoever thereon, the amount or balance due at this time * * * being $7,665.00, have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey, unto the said J. C. Humphreys * * * all that certain one-fourth undivided interest and being our entire undivided interest in and to all the real estate belonging to the Estate of the mother of M. C. McWhorter and J. C. Humphreys, * * * and the interest of M. D. McWhorter being that acquired under the will of his said deceased mother, Mrs. Mattie Lee Humphreys, deceased or as heir the said real estate being situated in the counties of Upshur and Wichita * * * and being all the land left by Mrs. Mattie Lee Humphreys in her estate with J. C. Humphreys, wherever situated but the said M. D. McWhorter reserves a one-fourth royalty in all the oil, gas and minerals in and under said lands, * * * except the reservation does not include the oil, gas and minerals under * * * the home place in the town of Pritchett * * * also a lot in the town of Pritchett, * * * and 150 acres described in deed from R. L. and Little Humphreys to J. C. Humphreys. * * * This conveyance and settlement also conveys all the interest in and to the notes, livestock and all personal property owned by the said M. D. McWhorter in the estate of his said deceased mother, Mrs. Mattie Lee Humphreys, deceased, and this conveyance is intended and does settle and discharge all claims whatsoever between the parties hereto on each other and all property rights are adjusted hereby, so that the property of the grantors is free of all claims of said grantee and the property of the grantee free of all claims of the grantors herein, as well as all personal claims of whatsoever nature each on the other."

It is to be observed that the credit on the $12,000 note represented approximately ¼ of its face amount. The evidence does not reflect if interest had accrued on the $12,000 and included on date of the credit of $3,055. Date of credit is not shown. It is not clear from the testimony if this credit of $3,055 represented ¼ of appellant's interest in the note or in the whole of the personal estate of his mother. Above release proceeds to mention a ¼ undivided interest. It reserves to appellant ¼ of the minerals. Under the terms of his mother's will, ¼ of the whole was bequeathed to appellant. Nevertheless, the release by its terms is claimed to be susceptible of a construction so as to include every interest pertaining to his mother's estate and to deceased's estate. To avoid such consequences, appellant set up that he was in ignorance of the alleged agreement of his mother and deceased, and that deceased fraudulently concealed such alleged fact from him at the time the release was executed.

It is to be noted that issue No. 22 does not include an inquiry if at the time the release was executed appellant had knowledge of the alleged agreement and intended by such instrument to release J. C. Humphreys of all rights under the agreement. There is no testimony that he knew. His testimony is to the effect that he did not know of such alleged agreement until after the death of deceased. To avoid the consequences of the terms of the release, the burden of proof rested upon appellant to establish the fact that he was ignorant of the agreement and that his step-father fraudulently concealed same from him. Issues Nos. 9 to 20, inclusive, conditionally submitted, to be answered only in the event of an affirmative finding to issue No. 8, were not answered. Issues Nos. 9 to 15, inclusive, dealt with the terms of the alleged agreement, if the will of 1931 and the will of April 13, 1935, were executed in pursuance to such agreement. Issues Nos. 17 to 20, inclusive, inquired if appellant knew of such agree-

ment on the date he executed the release; if deceased failed to inform appellant of the agreement; if appellant was misled; and No. 61, if the deed (release) was intended by deceased and appellant to be a release of deceased from said agreement.

In the absence of findings to some of above-mentioned issues conditionally submitted, issue No. 22 does not dispose of the claim of appellant that he did not know of the alleged agreement at the time he executed the release and if then known to him, he intended to release all claims under the alleged agreement. In view of the conclusion reached, that the negative finding to issue No. 8 is without support in the evidence, the controversy over the alleged settlement urged by appellees and the claim of fraud asserted by appellant became material issues to be ascertained, necessary to judgment.

We pretermit a discussion of the remaining propositions presented.

For the reasons above set out, the judgment is reversed and the cause remanded.

## On Motion for Rehearing.

Upon a reconsideration of the record, called to our attention by appellees in their motion for rehearing, we find that the reasons stated by us in the concluding paragraph of above opinion are not supported by the assignments of errors presented by appellant.

Appellees pleaded the alleged deed, dated January 19, 1939, as a release or settlement of all claims of appellant against the estate of J. C. Humphreys. To avoid legal effect of such deed so asserted, appellant, in a supplemental petition, pleaded that at the time he executed the deed he was without any knowledge of the alleged agreement between his mother and J. C. Humphreys to execute reciprocal wills, and said J. C. Humphreys concealed such agreement in violation of a duty to deal fairly and honestly with appellant under the fiduciary relationship that then existed between them. This defensive claim of appellant asserted in his supplemental petition was embraced in special issues Nos. 17 to 20, inclusive. They were not answered, since they were conditionally submitted to be answered only in event the jury to issue No. 8 answered "Yes." No exception was taken to this conditional submission of issues Nos. 17 to 20, inclusive. No request was made for an unconditional submission of same. No assignment of error attacks the action of the trial court in submitting above issues conditionally or for failure to submit same unconditionally.

In view of the foregoing condition of the record, appellant waived his right to have the jury pass upon his claim that he was without knowledge of the reciprocal will agreement. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084; 41 T.J. 1073, Sec. 257, and authorities there cited. And this court was without jurisdiction to reverse the cause premised upon the reasons assigned by us in the concluding paragraph of the original opinion. Quoting from White v. Glengarry Oil Co., Tex.Com.App., 156 S.W.2d 523, 524: "It is firmly settled that an unassigned error, unless it be fundamental in character, does not constitute a legally sufficient basis for the exercise, by the Court of Civil Appeals, of jurisdiction to revise or reverse a trial court's judgment." See also Stillman v. Hirsch, 128 Tex. 359, 99 S.W.2d 270.

In appellant's exceptions directed to issues Nos. 16, 18, 19 and 20, brought forward in his motion for new trial, being Nos. 72 to 78 in his assignments of error, and in his assignments of error 89 and 91 grounded upon his motion for judgment, and his attack upon the sufficiency of the evidence to support the jury's finding to issue No. 22, he asserts that the undisputed evidence is to the effect that at the time he executed the deed (release) he was without knowledge of the reciprocal will agreement of his mother and J. C. Humphreys, and the latter violated his fiduciary duty in not informing appellant of such reciprocal will agreement. And therefore, quoting from the brief, "the purported settlement under the provisions of the deed was null and void" and "did not bar him from recovering the property covered by the deed."

Appellant testified that he did not hear of or know of his mother's and J. C. Humphreys' reciprocal will agreement until a few days after the latter's death; and that no one had informed him of such alleged agreement prior to J. C. Humphreys' death. On cross-examination, appellant was asked: "You mean to tell the jury your mother lived from June 1, 1931, down to March 20, 1935, and never told you about that?" He answered: "She did not." Appellant's wife was present in the negotiations between appellant and J. C. Humphreys which led up to the execu-

tion of the deed (release) and she testified that in these conversations J. C. Humphreys made no mention of the alleged reciprocal will agreement and that she never heard of such reciprocal agreement until after J. C. Humphreys' death. R. B. Howell, a prominent attorney with whom J. C. Humphreys and appellant consulted preparatory to drawing the deed and who prepared the deed and took the acknowledgements, testified that the alleged reciprocal will agreement was not mentioned by J. C. Humphreys or appellant in any of the consultations they had with him. In brief, the foregoing is the evidence of the only witnesses who testified in regard to appellant's claim that he was without knowledge of the reciprocal will agreement at the time he executed the deed. The evidence reflects friendly and intimate relations through the years between appellant and J. C. Humphreys and that this continued up until about the time J. C. Humphreys' second marriage. The evidence, which will not be further detailed, reflects extensive business dealings between appellant and J. C. Humphreys, and the testimony of Mr. Howell is exhaustive covering the negotiations between the parties leading to and in the execution of the deed.

The testimony of the witnesses, the deed and its provisions, the relationship, association and business dealings, and all the other facts and circumstances detailed above and in the original petition were before the jury to be weighed by them in their consideration of No. 22. In weighing the foregoing, the jury reached the conclusion adverse to appellant's contentions presented in above assignments of error. We are unprepared to hold as a matter of law that this finding is without support in the evidence. As stated in Western Assur. Co. v. Busch, Tex.Civ. App., 203 S.W. 460, "The test as to the conclusiveness of the evidence is, Could it reasonably be supposed that the minds of unprejudiced men of ordinary intelligence might differ about it, either as to the weight to be given to the testimony or to the deduction drawn therefrom?" See also Lee v. International & G. N. Ry. Co., 89 Tex. 583, 36 S.W. 63; Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, 1063; 17 T.J. p. 926, Sec. 418; 41 T.J. p. 1029, Sec. 229, and authorities there cited; Transcontinental Ins. Co. v. Frazier, Tex.

Civ.App., 60 S.W.2d 268; Stone v. Wylie, Tex.Com.App., 34 S.W.2d 842, 843.

Premised upon the jury's findings to No. 22 and the observations above stated, our former judgment ordering a reversal of this cause is set aside and the judgment of the trial court is now ordered affirmed.