MELISSA WILSON *et al. v.* JOSIE STARBUCK *et al.*

(No. 8176)

Submitted October 8, 1935.  Decided November 5, 1935.

*J. Raymond Gordon* and *W. C. Haythe,* for plaintiffs in error.

*Wm. H. Sawyers* and *W. A. Brown,* for defendants in error.

KENNA, JUDGE:

On the 5th day of December, 1934, in a proceeding on appeal under Code, 41-5-7, from an order of the County Court of Summers County probating the will of Peter Cales, the Circuit Court of that county entered its order probating a certain paper dated January 2, 1925, as and for the last will

and testament of Peter Cales. To that order, Melissa Wilson and others, the children by his first marriage, heirs-at-law and distributees of Peter Cales, prosecute this writ of error.

The will in question reads as follows:

"I, Peter Cales, of Bellepoint, West Virginia, do make this my last will and Testament.

"First: I direct that all of my just debts be paid.

"Item Second: I give, devise and bequeath unto my present wife, A. V. Cales, all of my property, both real, personal and mixed and wheresoever the same is situate, in fee simple absolute; she to do with the same as she sees proper.

"Item Third: I appoint and designate my said wife, A. V. Cales, as the Executrix of this Will, and direct that no Bond shall be required of her, nor shall there *by* any Appraisement necessary.

"WITNESS my hand and seal this the 2nd day of January, 1925.

(SIGNED) PETER CALES (SEAL)".

Here follows a proper attestation clause with the signatures of three attesting witnesses.

Josie Starbuck and others, also children by a former marriage and heirs-at-law and distributees of Amanda V. Cales, deceased wife of Peter Cales, are the defendants in error.

Amanda V. Cales died before Peter Cales, so that the interests of the parties turn upon the fact that if the probate of the will stands, then, under the statute, the heirs-at-law and distributees of Amanda V. Cales are the beneficiaries, whereas, if the probate of the will fails, then Peter Cales died intestate, and his heirs-at-law and distributees are the beneficiaries.

It was shown in the circuit court that on January 2, 1925, Peter Cales and Amanda V. Cales went to the office of Judge Miller, in the city of Hinton, where they both resided, and that on that day they there executed wills in which each was made the sole and absolute beneficiary of the entire estate of the other. The phraseology of the wills is almost exactly the same, and to all intents and purposes, save as to the beneficiary, they may be regarded as identical. The subscribing witnesses, J. E. Hedrick, George Hepburn and B. Z. Carden, were called to Judge Miller's office and there, in the presence

of Judge Miller, Peter Cales and Amanda Cales, and of each other, they subscribed, as witnesses, both wills. These facts were established by the subscribing witnesses who also testified to the capacity of Peter Cales at the time his will was signed and declared.

Upon the wills themselves, and upon this background of uncontroverted circumstances, the plaintiffs in error, opposed to the probate, take the position that the wills of Peter Cales and Amanda V. Cales were mutual and reciprocal wills made pursuant to a contract between them based upon an adequate consideration to sustain it, the sole purpose of which was to make the survivor of them the beneficiary of the one to die first, and that this condition was fully satisfied upon the death of Amanda V. Cales, leaving the will of Peter Cales, not revoked, but inoperative. They point to the fact that in neither will are any other beneficiaries named either upon the death of the named beneficiary or otherwise. The defendants in error take the position:

First, that the record fails to disclose that the two wills are mutual and reciprocal wills based upon a valid consideration which will sustain them as a matter of contract.

Second, that even though they are mutual and reciprocal wills, the death of the first testator, so far from making the will of the second testator inoperative, renders it irrevocable and does not operate to revoke the will of the second testator in any of the ways named in Code, 41-1-7.

It is admitted in argument by counsel for plaintiffs in error that the will of Peter Cales was not revoked; so that we do not deem it necessary to discuss that question under Code, 41-1-7.

From this record, the sole questions for decision are: (1) whether the wills of Peter Cales and Amanda V. Cales were mutual and reciprocal wills based upon a contract to make them, and (2) whether, if that is so, the death of the first testator operated to entirely fulfill the purpose of the mutual and reciprocal wills and therefore rendered inoperative the will of the second to die.

We pass over the question as to whether the wills themselves are such a memorandum as would take the contract

to make mutual and reciprocal wills for the devise of land out of the statute of frauds, for the reason that if such contract is established by parol, then, in our opinion, such full performance of that contract on the part of Amanda V. Cales has taken place by reason of her death with her own will remaining in full force and effect, as to take the case out of the statute. *Canada* v. *Ihmsen, Administrator,* 33 Wyo. 439, 240 Pac. 927, 43 A. L. R. 1010, 1016, and note; *Smith* v. *Black,* 100 W. Va. 433, 130 S. E. 657; *Burdine* v. *Burdine,* 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741.

The authorities seem to be in agreement on the proposition that where one party to a contract to make mutual wills has fully performed the undertaking and has died, the contract is enforceable in equity against the estate of the survivor. In the case of a joint will between husband and wife, this court is committed by the case of *Underwood* v. *Myer,* 107 W. Va. 57, 146 S. E. 896, to what, in number of cases, may be the minority rule, to the effect that the reciprocal provisions of the will *prima facie* evidence a contractual relationship between the makers. See Annotation in 43 A. L. R. at page 1027, and 60 A. L. R. at page 629. The rule of the *Underwood* case is simple and direct, as against the rather strained, if logical, conclusion the other way. The reasoning upon which this holding is based seems to be that the fact of execution of a joint will is of itself proof positive that both of the parties had full knowledge of the terms and provisions of the will, that the reciprocal dispositions show a consideration moving from each to the other, and hence that it must be supposed that they entered into the agreement in a contractual sense. If this be true, and if it be shown that, instead of executing one instrument, the makers executed separate instruments under such circumstances as that their common knowledge of the terms of the wills and an exchange of reciprocal provisions clearly was contemplated, then it would have to be said that a legal situation tantamount to the making of a joint will had been established, and that the reasoning adopted by this Court in *Underwood* v. *Myer,* 107 W. Va. 57, 146 S. E. 896, is applicable. In the case before us, there can be but little doubt, considering the inescapable inference that

these wills were drawn by the same attorney, the established fact that they were executed in the same office with both testators present, that the same attesting witnesses signed both wills, and that the reading of one would convey full information as to the terms of the other, with the exception of the beneficiary, that both the testators signed with full information as to the terms employed and the disposition made in the will of the other, and that the signing of each was the inducement to the other to sign. Under such circumstances, it would, we think, be manifestly inequitable to declare a rule under which either of the testators might revoke his will without the knowledge of the other, leaving the will of the other in full effect when the plain reasons for its execution had been surreptitiously removed. Yet that is the result that would follow a holding that these wills were not based upon a contractual understanding. We therefore conclude that the same rule as to a showing of contractual relationship between the testator as that laid down by this Court in the case of joint wills is applicable here. It must be pointed out, however, that this conclusion is not reached by holding in this case that where the wills are mutual with reciprocal provisions but not joint, that the wills themselves, without proof of the circumstances under which they were drawn and executed, are sufficient evidence to establish the contract. There are no declarations nor recitals in these wills that would be sufficient for that purpose. The general rule is, undoubtedly, in the case of mutual, but not joint wills, that the making of the wills themselves, although evidential of the contractual relationship, is insufficient to establish that relationship. The wills before us, with nothing more than their due execution shown, undoubtedly would fall within that rule. We hold, however, that because the circumstances shown by the evidence, in addition to the due execution of the mutual wills, are sufficient for all practical purposes to put them on a parity with a single joint will, that such proof is sufficient to establish the contractual relationship as in the case of a joint will.

Having determined, then, that the wills of Peter Cales and Amanda V. Cales were entered into pursuant to a contractual relationship between them, we come to consider the effect of

the death of Amanda V. Cales upon the will of the survivor, Peter Cales. It is urged by the plaintiffs in error that where the wife is sole and absolute beneficiary in the husband's will and the husband is sole and absolute beneficiary in the wife's, and neither will makes other disposition, either by remainder over or otherwise, that the death of the first to die renders inoperative the will of the survivor. This contention is strongly borne out by the case of *Anderson* v. *Anderson,* 181 Iowa 578, 586, 164 N. W. 1042, in which the facts were quite similar to those in the case before us, excepting that the will of the wife was dated July 10, 1903, and that of the husband August 15, 1903. It was there held that the purpose of the mutual wills was simply to vest in the survivor the entire estate of both, and that when this was accomplished by the death of the first to die, the will of the survivor was rendered inoperative to transfer the estate to the heirs and distributees of the first to die under an Iowa statute similar to our own, the purpose of which was to prevent the lapsing of legacies and devises where the named beneficiary had predeceased the testator. To show the weight of the court's reasoning in that case, we quote it at length:

"Does the statute which appellants invoke (Code, Sec. 3281) have any application to this case? In our judgment it does not. By this provision which preserves to the heirs of a devisee who predeceases the testator making the devise the right to succeed thereto, a lapse is prevented. That is, if the devise is one which would have vested in the deceased devisee at some time had he lived, his heirs take his place in the same right. They take through the devisee, or (perhaps in more accurate terms) they take in his stead by way of representation or statutory substitution. But their right is not of any better or higher quality than was his. If then, as we have already indicated, the wills are to be treated as mutual and reciprocal, constituting in legal effect the will of the first to die, it follows that the reciprocal devise which would have vested in the husband had the wife died first could never become effective or payable either to the husband or his heirs. In other words, the husband's rights in the estate of his wife were by the will made to depend solely upon his surviving her. He did not survive her, and the will she had made in his favor, conditioned upon his outliving her, can

never be made effective for any purpose at the demand of his heirs. This is the logical and necessary result of the most recent holdings on this branch of the law of wills. *Baker* v. *Syfritt,* 147 Iowa, 49, 125 N. W. 998; *Campbell* v. *Dunkelberger,* 172 Iowa 385, 153 N. W. 56; *Murphy* v. *Black,* 44 Iowa, 176; *Rastetter* v. *Hoenninger,* 214 N. Y. 66, 108 N. E. 210; *Edson* v. *Parsons,* 155 N. Y. 567, 50 N. E. 265; *Frazier* v. *Patterson,* 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003; *In re Diez,* 50 N. Y. 88; Cawley's Estate, 136 Pa. 628, 20 Atl. 567, 10 L. R. A. 93; *Dufour* v. *Periera,* 1 Dick. Ch. 419; *Carmichael* v. *Carmichael,* 72 Mich. 76, 40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528; *Lewis* v. *Scofield,* 26 Conn. 452, 68 Am. Dec. 404; *Ex parte Day,* 1 Bradf. Sur. (N. Y.) 476; *Carle* v. *Miles,* 89 Kan. 540, 132 Pac. 146, Ann. Cas. 1915A, 363; *Gerbrich* v. *Freitag,* 213 Ill. 552, 73 N. E. 338, 104 Am. St. Rep. 234, 2 Ann. Cas. 24, together with the numerous authorities cited in these precedents. While these cases are not all closely in point with the one at bar they do together, though with some variance, afford a fair guide to correct conclusions upon a question which is not frequently before the courts and the law upon which has not yet progressed entirely beyond its formative period. But the present case brings it up in its simplest and least complicated form. The will as we construe it is wholly reciprocal. Each party thereto make the other the sole beneficiary. It creates no remainder and no executory devises. The survivor is to take all that either or both has to give, benefits which are subject to no condition or contingency save that of survivorship. As the husband died first the instrument is to be treated and given effect as his will alone, and when this is done nothing is left to operate or to be given effect as the will of the survivor."

This seems to us to be the most logical viewpoint that can be taken in this baffling situation. To begin with, it is perfectly apparent that the main purpose of both testators is to vest his estate in the survivor. To say it was intended that then the contract was to bind the survivor by his own will to permit his estate to pass to the heirs-at-law and distributees of the first to die, to the exclusion of his own next of kin, we think reaches an unnatural result. It is urged that to hold that the death of the first testator to die renders the will of

the survivor inoperative results in the property of the first to die going to the line of the survivor. This, however, would not result from the contract to make the wills, since, under such circumstances, the property of the first to die would pass to the survivor with full power of alienation, and would not be bound to go to his heirs or distributees. It is difficult also to say that a contractual obligation exists by which the survivor would be obliged to permit his will to remain in full force and effect, and at the same time to say that he has full power of disposition over the property held by him under the first to die, which, if exercised, would render nugatory the contractual obligation to permit his will to remain in full force and effect. Yet the purpose is perfectly plain, and, indeed, in the wills before us, is emphasized, to give to the survivor the full, absolute and unquestioned ownership of the property of the first to die. The full and absolute power of alienation is certainly repugnant to the notion that the survivor is under a contractual obligation to keep his property intact and his will unrevoked so that it will pass by virtue of the contract to the heirs-at-law and distributees of the first to die. In case of a doubtful interpretation, the law naturally favors that which will result in the vesting of estates. *Suter* v. *Suter*, 68 W. Va. 690, 70 S. E. 705, Ann. Cas. 1912B, 405; *Stout* v. *Clifford*, 70 W. Va. 178, 73 S. E. 316; *Patton* v. *Corley*, 107 W. Va. 318, 148 S. E. 120; *Burche* v. *Neal*, 107 W. Va. 559, 149 S. E. 611.

We therefore conclude that on the basis of our decided cases in this state, a contractual relationship pursuant to which the wills of Peter Cales and Amanda V. Cales were made has been sufficiently shown; and that the two wills being in all respects tantamount to a joint will, the purpose of which is to vest the estate of the first to die in the survivor, without limitation over, that the death of Amanda V. Cales rendered the will of the survivor, Peter Cales, inoperative.

For the reasons stated, the judgment of the circuit court of Summers County probating the will of Peter Cales is reversed and set aside and the case is remanded to that court for further proceedings in accordance with this opinion.

*Reversed and remanded.*