Agnes KIRK et al., Appellants,

v.

Lucille BEARD et al., Appellees.

No. 7163.

Court of Civil Appeals of Texas.

Texarkana.

March 8, 1960.

Rehearing Denied April 5, 1960.

---

Fred Erisman, Longview, Robert M. Mahanay, Gean B. Turner, Cleburne, Strasberger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellants.

Gordon R. Wellborn, Rex Houston, Henderson, Roberts & Smith, Earl Roberts, John Smith, Longview, Wynne & Wynne, Angus G. Wynne, Clarence A. Abramson, Dallas, for appellees.

DAVIS, Justice.

Plaintiffs-appellees, Lucille Beard and husband, W. C. Beard, Loanna Silvey Jacobs and husband, O. L. Jacobs, Irma Kate Silvey Murphy and husband, Q. C. Murphy, and Mozelle Silvey Pitner, a widow, sued appellants-defendants Agnes Kirk and husband, I. W. Kirk, Bessie Richerson and husband Ruby Richerson, Gene Turner, Winnell Shipley and husband Ross C. Shipley, and Shirley Titus, a minor, over the wills of W. H. Sexton, deceased, and J. E. Sexton, deceased. Appellees alleged in their pleadings that they were entitled to all of the estate, either real, personal or mixed and wherever situated, of which J. E. Sexton died seized and possessed. That appellees were entitled to the estate of J. E. Sexton as a result of a valid, legal and binding contract and agreement which J. E. Sexton made with his brother, W. H. Sexton, on or about November 23, 1948. They alleged that J. E. Sexton and W. H. Sexton agreed with each other that each would make mutual, reciprocal and irrevocable wills, and by the terms of their wills they would leave to each other their undivided interests in all lands, together with all personal property situated thereon in Johnson, Hill and Somervell Counties, Texas; and that they would leave to each other and to Mozelle Silvey Pitner, Loanna Silvey Jacobs, Lucille Beard and Irma Kate Silvey Murphy, their nieces, a sum of money equal to the amount of Federal Estate Taxes, and State Inheritance Taxes assessed against their estates and they would each leave to Lucille Beard, Loanna Silvey Jacobs, Mozelle Silvey Pitner and Irma Kate Silvey Murphy, their nieces, share and share alike, the remainder of their property of which they each should die seized and possessed. Appellees alleged that W. H. Sexton and J. E. Sexton did on November 23, 1948, make, execute and deliver valid wills carrying out the terms of their mutual agreement to carry out a planned disposition of all assets, of every description, real, personal, or mixed which each of them owned at the time of their respective deaths.

That on November 23, 1948, W. H. Sexton made, executed and delivered his last will and testament which reads as follows:

*"Last Will and Testament of W. H. Sexton"*

"The State of Texas:
County of Rusk:

"I, W. H. Sexton, an adult resident citizen of Rusk County, Texas, being of sound mind and disposing mind and memory, and being desirous to settle my wordly affairs while I have strength to do so, do make this my last will and testament, hereby revoking all other wills and codicils by me heretofore made.

## I.

"It is my desire and I so direct that all of my just debts, funeral and testamentary expenses, including Federal Estate Tax, State Inheritance Tax, accrued Federal Income Tax, and all other death dues and expenses incident to the administration of my estate, be paid out of my estate by my executors hereinafter named, as soon after my death as may be by them found convenient.

## II.

"I will, give, devise and bequeath unto my brother, J. E. Sexton, of Johnson County, Texas, all of my undivided interest in land located and situated in Johnson County, Texas, and in Hill County, Texas, and in Somerville County, Texas, which I may now own or be interested in at the time of my death, together with all my undivided interest in all livestock, farming ranching equipment, including cattle, horses, hogs, saddles, bridles, automobiles, trucks, tractors, motors, plow tools, threshing machines, and all other machinery and equipment of whatsoever nature and wheresoever situated; in either and all of the three above mentioned counties, to have and to hold the same, together with all and singular the rights and appurtenances thereto in anywise belonging, unto him the said J. E. Sexton, his heirs or assigns, forever. My brother, J. E. Sexton, and I own the above mentioned farm and ranch property, livestock and equipment, jointly, commonly known in the vicinity as the Sexton Ranch, and it is my will and desire that he have all of my interest in the same at my death. This bequest, however, does not include any cash which I might have on deposit in any Bank or Banks situated in any of the three counties above named, or any bonds, notes or securities belonging to me. regardless of where located.

## III.

"I will, give, devise and bequeath unto all of the beneficiaries of my will, jointly, to-wit: J. E. Sexton, my brother, and Mrs. Moselle Silvey Pitner, Mrs. Loanna Silvey Jacobs, Mrs. Lucille Beard, and Mrs. Irma Kate Silvey Murphy, my nieces, a sum of money equal to the amount of Federal Estate Tax assessed against my estate, and I also will, give, devise and bequeath unto each of my said beneficiaries, as their respective interest may appear, a sum of money equal to the State Inheritance Tax assessed against each of my beneficiaries. The bequests provided for in this paragraph are for the purpose of paying Federal Estate Tax assessed against my estate and State Inheritance Tax assessed against my beneficiaries, and I direct my Executors to pay said Federal Estate Tax and State Inheritance Tax with such funds so provided.

## IV.

"It is my will and desire that all of the residue and remaining part of my property, both real and personal, I may die seized and possessed of, after the payment of all my just debts and all expenses incident to the administration of my estate, shall pass to and vest, in fee simple, in my four neices, to-wit: Mrs. Moselle Silvey Pitner, Mrs. Loanna Silvey Jacobs, Mrs. Lucille Beard, and Mrs. Irma Kate Silvey Murphy, jointly, to be shared by them equally, share and share alike, and after the payment of all my just debts, I give, bequeath and demise unto my said neices, Mrs. Moselle Silvey Pitner, Mrs. Loanna Silvey Jacobs, Mrs. Lucille Beard, and Mrs. Irma Kate Silvey Murphy, the remainder of all the property I may own or be interested in at the time of my death, in fee simple, to be shared by them equally, share and share alike.

### V.

"I hereby constitute and appoint my brother, J. E. Sexton, and Mrs. Moselle Silvey Pitner, Independent Executors of this, my last will and testament, and I direct that no bond or security be required of them, or either of them, as Independent Executors.

### VI.

"It is my will that no other action shall be had in the County Court in the administration of my estate than to prove and record this will and to return an inventory and appraisement of my estate and a list of claims.

"In Testimony Whereof, I have hereto set my hand at Henderson, Texas, this the 23rd day of November, A.D.1948.

s/ W. H. Sexton

"Signed, declared and published by W. H. Sexton, as his last will and testament, in the presence of us, the attesting witnesses, who have hereunto subscribed our names in the presence of said W. H. Sexton, at his special instance and request, this 23rd day of November, A.D.1948.

s/ Ned F. Young
s/ V. W. McDavid."

*"Last Will and Testament of J. E. Sexton"*

"The State of Texas:
County of Rusk :

"I, J. E. Sexton, an adult resident citizen of Johnson County, Texas, being of sound mind and disposing mind and memory, and being desirous to settle my wordly affairs while I have strength to do so, do make this my last will and testament, hereby revoking all other wills and codicils by me heretofore made.

### I.

"It is my desire and I so direct that all of my just debts, funeral and testamentary expense, including Federal Estate Tax, State Inheritance Tax, accrued Federal Income Tax, and all other death dues and expenses incident to the administration of my estate, be paid out of my estate by my Executors hereinafter named, as soon after my death as may be by them found convenient.

### II.

"I will, give devise and bequeath unto my brother, W. H. Sexton, of Rusk County, Texas, all of my undivided interest in land located and situated in Johnson County, Texas, and in Hill County, Texas, and in Somerville County, Texas, which I may own or be interested in at the time of my death, together with all my undivided interest in all livestock, farming and ranching equipment, including cattle, horses, hogs, saddles, bridles, automobiles, trucks, tractors, motors, plow tools, threshing machines, and all other machinery and equipment of whatsoever nature and wheresoever situated in either and all of the three above mentioned counties, to have and to hold the same, together with all and singular the right and appurtenances thereto in anywise belonging, unto him, the said W. H. Sexton, his heirs or assigns, forever. My brother, W. H. Sexton, and I own the above mentioned farm and ranch property, livestock and equipment, jointly commonly known in the vicinity as the Sexton Ranch, and it is my will and desire that he have all of my interest in the same at my death. This bequest, however, does not include any cash which I might have on deposit in any Bank or Banks situated in any of the three counties above named, or any bonds, notes or securities belonging to me, regardless of where located.

### III.

"I will, give, devise and bequeath unto all of the beneficiaries of my will, jointly, to-wit: W. H. Sexton, my brother, and Mrs. Moselle Silvey Pitner, Mrs. Loanna Silvey Jacobs, Mrs. Lucille Beard, and Mrs. Irma Kate Silvey Murphy, my neices, a sum of money equal to the amount of Federal Estate Tax assessed against my estate, and I also will, give, devise and bequeath unto each of my said beneficiaries, as their respective interests may appear, a sum of money equal to the State Inheritance Tax assessed against each of my beneficiaries. The bequests provided for in this paragraph are for the purpose of paying Federal Estate Tax assessed against my estate and State Inheritance Tax assessed against my beneficiaries, and I direct my executors to pay said Federal Estate Tax and State Inheritance Tax with such funds so provided.

### IV.

"It is my will and desire that all of the residue and remaining part of my property, both real and personal, I may die seized and possessed of, after the payment of all my just debts and all expenses incident to the administration of my estate, shall pass to and vest, in fee simple, in my four neices, to-wit: Mrs. Moselle Silvey Pitner, Mrs. Loanna Silvey Jacobs, Mrs. Lucille Beard, and Mrs. Irma Kate Silvey Murphy, jointly, to be shared by them equally, share and share alike, and after the payment of all my just debts, I give, bequeath and demise unto my said Neices, Mrs. Moselle Silvey Pitner, Mrs. Loanna Silvey Jacobs, Mrs. Lucille Beard, and Mrs. Irma Kate Silvey Murphy, the remainder of all the property I may now own or be interested in at the time of my death, in fee simple, to be shared by them equally, share and share alike.

### V.

"I hereby constitute and appoint my brother, W. H. Sexton, and my neice, Mrs. Moselle Silvey Pitner, Independent Executors of this, my last will and testament, and I direct that no bond or security be required of the__, or either of them as Independent Executors.

### VI.

"It is my will that no other action shall be had in the County Court in the administration of my estate than to prove and record this will and to return an inventory and appraisement of my estate and a list of claims.

"In Testimony Whereof, I have hereto set my hand at Henderson, Texas, this the 23rd day of November, A.D., 1948.

s/ J. E. Sexton

"Signed, declared and published by J. E. Sexton, as his last will and testament, in the presence of us, the attesting witnesses, who have hereto subscribed our names in the presence of said J. E. Sexton, at his special instance and request, this 23rd day of November, A.D.1948.

s/ Ned F. Young

s/ V. W. McDavid."

W. H. Sexton, who had never been married, died October 30, 1952. J. E. Sexton and Mrs. Pitner filed his will for probate in County Court of Rusk County, Texas. The will was admitted to probate on November 24, 1952, and J. E. Sexton and Mrs. Pitner qualified as co-executors of the estate and administered the same. J. E. Sexton, who had never been married, died on March 1, 1958, and he was seized and possessed of both real and personal property.

Appellees further alleged in their petition that J. E. Sexton by accepting the benefits

under the will of W. H. Sexton, which had been made as a result of a contract and agreement with him, the said J. E. Sexton, by causing the will of W. H. Sexton to be offered for and admitted to probate and by causing every portion of the agreement insofar as it affected W. H. Sexton to be complied with, he, the said J. E. Sexton, ratified and confirmed the contract and agreement which he had made with his brother, W. H. Sexton, and was thereafter forever estopped to alter, change or amend the will which he the said J. E. Sexton on November 23, 1948, as a result of the agreement and contract he had made with his brother W. H. Sexton.

Appellees pray that their title be quieted and that the cloud cast upon their titles by the appellants' claims be removed and that they be awarded a judgment awarding to them all the properties owned or claimed by J. E. Sexton at the time of his death by reason of the agreement and contract made between W. H. Sexton and J. E. Sexton; and that a trust be declared to exist in favor of appellees upon all properties, both real and personal, owned and claimed by J. E. Sexton at the time of his death. They further prayed that they be declared the owners of all the properties of which J. E. Sexton died seized and possessed.

The appellants filed a general denial of the contract between the Sexton brothers and also pleaded the statute of frauds and various claims of estoppel as against the appellees.

The case was tried before a jury and two special issues were submitted and both were answered favorable to the appellees. The court rendered judgment for the appellees, finding in said judgment that J. E. Sexton and W. H. Sexton did on November 23, 1948, execute mutual wills pursuant to an agreement between them to dispose of all their properties at each of their deaths. The trial court further found that the will of J. E. Sexton was and is a lawful and binding contract based upon an adequate

consideration. That J. E. Sexton after taking and receiving the devises and bequests made to him under the will of his brother, W. H. Sexton, he, the said J. E. Sexton, was bound by said contract and could not break or alter the same or any part thereof thereafter.

The judgment of the lower court awarded to the appellees, in equal shares, all the property, both real and personal, of which J. E. Sexton died seized and possessed, and further imposed a constructive trust in favor of appellees upon all of said properties. The appellants have perfected their appeal and bring forward 15 points of error.

In view of the importance of this lawsuit, we believe it necessary to give a little of the history of the Sexton family. There were four boys and one girl. The boys were: Joe Sexton, J. W. (John) Sexton, W. H. (Henry) Sexton and J. E. (Jim) Sexton. The girl's name was Mary Sexton Silvey. Of the Sexton family, Joe died first. Then John, Henry and Jim made exact wills each willing to the other two all of his property. After John's death, Mrs. Silvey filed a contest of John's will. An agreement was made and entered into not to probate the will but to divide the property equally between Henry, Jim and Mrs. Silvey. Then, Henry and Jim decided to make another will. Before making the will they went to talk with their sister, Mary Silvey, about it. According to the testimony introduced upon the trial of the case, Mrs. Silvey told them she didn't want any of their property. But should they want her and her family to have any of it, she requested that they leave it to her children, their nieces, Lucille Silvey Beard, Loanna Silvey Jacobs, Irma Kate Silvey Murphy and Mozelle Silvey Pitner.

After talking with their sister, Mary, Henry and Jim went to the office of a lawyer in Henderson, Texas, and told him of their agreement to make their wills and dispose of their property. They went to

the office of Vernon W. McDavid and told him they had been to see their sister at Overton and had talked the whole thing through and had agreed on what they wanted to do. It seems that Henry did most of the talking and Jim agreed that what Henry told Attorney McDavid was the truth. After explaining to Mr. Mc-David what they wanted to do with their property, he called in his secretary and dictated exact wills, except for the beneficiary as set out in Section II of said wills. It will be noted that the wills are word-for-word identical with this exception. After the wills were written, they were both read over to the Sexton brothers and they agreed to them, and they were carried down to the main office of the bank building and were both executed in the presence of Ned Young and the Attorney McDavid.

By their Points 1 through 5, appellants challenge the judgment of the trial court on the ground that there is no evidence, insufficient evidence, and that the verdict and judgment in favor of appellees are against the overwhelming weight and preponderance of the evidence.

Appellees challenge these points and point out that the wills were proved without objection. They first point out the agreement to make the wills before they were drawn and executed. Under the testimony of Attorney McDavid, there is some evidence, it is sufficient, and is full and satisfactory to support the jury's answers to the special issues. In addition to the testimony of Attorney McDavid, the appellees put on two additional witnesses who testified about some conversations they had with Jim Sexton prior to his death. They were Albert Bowman and Walter M. Landers of Cleburne, Texas, the place where Jim made his home for a large part of the time during the latter part of his life.

Under the testimony of Attorney Mc-David he said:

" * * * And I reminded them that they shouldn't change it without con-sulting each other, and I also reminded them of the fact that under the terms of the wills there, well, they couldn't sell the ranch without both of them signing it. I said: 'If you want to sell the ranch, you can both sign the deed and sell it, but one of you can't sell your interest without consulting the other or revoking the will without securing the consent of the other.' "

The attorney further testified that:

"He said that 'after talking it over with sister Mary she didn't want anything we had, that it would be all right to not will her anything, that she wouldn't complain, but whatever they might will to her, instead of willing it to her, to give it to her daughters.'

"Then Henry said, 'I want to change my will and I want to will my half of the ranch to my brother, Jim Sexton and I want to will the rest of my property to the four nieces.' And the question came up about inheritance taxes and we arrived at the conclusion that the wills stated about the inheritance taxes. That was a problem to be considered, too. Then the question came up as to who to name as Executors of the will. Well, in the old will they had named each other as executors, and I suggested that they have more than one executor in case of the death or incapacity of one of them to serve, and I asked them who they would like for a second executor, if they wanted a second executor, and Henry said, 'I want Moselle.' Well, when Henry finished talking, when we had finished our discussion, I turned to Henry,—Henry wasn't as talkative as—"

"Q. You mean Jim?"

"A. Jim wasn't as talkative as Henry but I turned to Jim and he was sitting across the desk, and I spoke to Jim Sexton and said, 'Now you

have heard what Henry said, Do you understand it like he stated it? In others words, do you want to make your will now to will your half of the ranch property to your brother Henry here, and take care of the inheritance tax and will the rest of the property to the four nieces?' He said, 'Yes, sir, that is the way I want mine.' So, with that in mind, well, I called the secretary in and dictated the wills, it didn't take long to write them, and after the wills were executed well, they needed two witnesses and they both knew Ned Young down at the bank, he frequently serves as a witness to wills there, and we went down to his office and I was present and each of them signed the wills and Ned and I signed as witnesses and they took the wills with them."

Mr. Bowman testified that Jim told him that he and his brother Henry had come to an agreement about the disposition of their property and that he had signed a will and that his nieces would receive the property.

He also told Mr. Landers who asked him about fixing up a Baptist Orphanage at Waxahachie that he had made an agreement with his brother and that he could not dispose of his property or money because he had made a will and he expected to be bound by it. He testified that, at his death, his four nieces would get the property. This was the same testimony that Mr. Landers gave relative to selling a ranch.

■■ The testimony is sufficient to prove the making of the contract prior to the making of the wills. The testimony further shows that Jim Sexton probated the will of Henry Sexton and received the benefits provided for him in Henry's will. By this agreement, making the wills, and exercising his option under the will, he became bound under the contract to let his property go to his nieces. Such is the holding in: Larrabee v. Porter, Tex.Civ.

App., 166 S.W. 395, wr. ref. To the same effect is the holding in Sherman v. Goodson's Heirs, Tex.Civ.App., 219 S.W. 839, wr. ref.; Pullen v. Russ, Tex.Civ.App. 226 S.W.2d 876; Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1; Weidner v. Crowther, Tex., 301 S.W.2d 621; Hamilton v. Hamilton, 154 Tex. 511, 280 S.W.2d 588; McWhorter v. Humphreys, Tex.Civ.App., 161 S.W.2d 304, wr. ref., w. o. m.; and Johnson v. Durst, Tex. Civ.App., 115 S.W.2d 1000, wr. dis.

Considering all of the evidence in this case in the manner and under the rules laid down by the Supreme Court of Texas in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, the verdict and judgment in favor of appellees herein are not so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and manifestly unjust.

Points 1 through 5 are overruled.

■ By Points 6 and 7 appellants complain of the action of the trial court in granting judgment for the appellees and contend that such recovery upon the alleged oral contract or contracts to devise the lands of the testators is barred by the statute of frauds and contend that such judgment in effect varies the terms of the alleged contractual wills in violation of the parol evidence rule. Such contention does not seem to bear with the law. In 20 Tex. Jur. 414, Sec. 136, we find the following:

"A fully executed agreement, as distinguished from one which is still executory, is not affected by the statute of frauds. Thus, where there has been complete performance of an agreement for the sale and purchase of land the legal relations of the parties are no longer affected by the statute.

"An oral contract for the sale of land is not unlawful, and when the contract has been executed, the statute of frauds cannot be invoked to undo that which has been consum-

mated. *Further, the execution of a joint and mutual deed by a husband and wife in consummation of a previous oral agreement between them removes the oral agreement from the operation of the statute of frauds."* (Emphasis added.)

■ Appellants take the position that the Jim Sexton will does not make any conveyance to the nieces. Since paragraphs II and III of the will as to W. H. Sexton is in fact unenforceable because of the death of W. H. Sexton, then paragraph IV comes into effect and all the property goes accordingly. They take the further position that under no circumstances can an oral agreement be shown to make mutual wills that affect the title to land. It is true that only under limited circumstances can land be conveyed by a parol agreement but a parol agreement can be shown where a contract is entered into as a result of this agreement. To hold otherwise would leave an unlimited amount of land in this state with the title unsettled. The oral agreement to make the mutual wills could and must be shown in a case of this character and the statute of frauds cannot prevent the enforcement of the agreement to execute mutual wills where the wills are actually executed. Such is the holding of the Supreme Court of Texas in Weidner v. Crowther, 301 S.W.2d 621; and Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165; and by Courts of Civil Appeals in the cases of Sherman v. Goodson's Heirs, 219 S.W. 839, wr. ref.; and McWhorter v. Humphreys, 161 S.W.2d 304, wr. ref., w. o. m. To the same effect see Wilson v. Starbuck, 116 W.Va. 554, 182 S.E. 539, 102 A.L.R. 485.

Points 6 and 7 are overruled.

We have carefully examined the record as to other points asserted by appellants, find them to be wholly without merit and they are overruled.

The judgment of the trial court is affirmed.

CHADICK, Chief Justice (concurring).

This is an independent study made without examination of any other opinion or opinions that may be filed herein. I have reached the conclusion that the trial court judgment should be affirmed.

The appellants' first 5 points of error are directed to the absence, insufficiency and weight of the testimony to support the verdict and judgment that W. H. (Henry) Sexton and his brother, J. M. (Jim) Sexton, made mutual wills.

The essence of the evidence is this: Henry and Jim Sexton, both of whom lived and died unmarried, together went to the office of their attorney and Henry instructed the lawyer to prepare them separate wills identical in language except that each made the other the first beneficiary of his will. In the course of Henry's instructions to the lawyer he stated that he and Jim had agreed upon the disposition of their property and the lawyer took the occasion to tell them his opinion of the effect of making wills as they directed and reminded them of their experience with identical wills when their brother John died, and cautioned them that they should not change the wills they were directing him to prepare except after consultation one with the other and that neither could sell his interest in the ranch mentioned in the will without the other joining in the conveyance, and that neither could revoke his will without the other's consent. The wills as prepared were read to the brothers by the lawyer and the terms of the wills again explained to Jim and Jim agreed that the wills provided for disposition of his property the way he had in mind and that he and Henry had made the agreement to dispose of their estates in the way the wills provided in a talk with their sister Mary. Two witnesses testified to separate conversations with Jim prior to Henry's death. In one of the conversations Jim stated that he could not sell the ranch land if he wanted to as he and his brother had made an agreement and prepared wills to that

effect. In the other conversation he purportedly stated that after their deaths, that is, Henry's and Jim's, the property would go to their nieces.

Thus it is shown one brother in the presence of the other directed the lawyer in the preparation of the wills. Thereafter the lawyer advised them of his opinion of the legal effect of the wills. Following an explanation to both brothers, the lawyer directed an explanation to Jim alone and with the contents of the will as prepared spread before him Jim Sexton stated that it represented the agreement with his brother. In addition to such evidentiary elements as the wills being prepared at the same time and by the same lawyer and being identical in language, except in each naming the other as first beneficiary, and statements made by Jim Sexton to apparently disinterested witnesses implying the making of wills by he and his brother Henry pursuant to some agreement, all of which has probative value under Hamilton v. Hamilton, 154 Tex. 511, 280 S.W.2d 588; Pullen v. Russ, Tex.Civ. App., 226 S.W.2d 876, wr. ref., n. r. e.; Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1 and Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, wr. ref., in determining whether wills are mutual and contractual in nature, there was presented to the jury evidence that some agreement as to testamentary disposition of their property had been reached in a conference with their sister and that the wills as written incorporated or stated the terms of the agreement. Evidence subject to the foregoing conclusion and believed by the jury, as it was here, is sufficient to support the verdict and judgment entered. Necessarily, the evidence being sufficient, and there being no countervailing evidence to overwhelm it, appellants' first 5 points are overruled.

The appellants' 6th point raises a serious question of whether or not the wills may be shown to be mutual and contractual in nature by parol evidence despite Section 4 of Art. 3995, Vernon's Ann.Tex.Civ.St., the statute of frauds.

Examination of the numerous cases brought to the attention of the Court where parol evidence was received to establish the concert of principals in the making of mutual wills shows that in only one, Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395, wr. ref., is the effect of the statute discussed, but since it was not invoked in the trial court as a defense, the appellate court made no determination of the question it presented.

There are many cases holding that parol testimony is admissible for such purposes but the effect of the statute of frauds is not alluded to in them. Among these are Hamilton v. Hamilton, supra; Pullen v. Russ, supra, Bradford v. Nye, supra, and Wagnon v. Wagnon, supra. In any event Larrabee v. Porter, supra, is persuasive and seems to be in the current of authority pointed out in 169 A.L.R. page 43, Section 3. It appears that other jurisdictions besides Texas have long held parol testimony admissible for this purpose upon theories of consummated parol contract, estoppel or expressed trust, depending upon the facts of the case. The facts here show a performance sufficient under the law of estoppel to support the admission of parol evidence to establish the agreement. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, and the many cases following in its wake, relied on by appellant, are not controlling under the facts of this record. Here it is evident that more than a breach of contract will occur. A fraud would be worked upon Henry Sexton's legal heirs if Jim Sexton should be permitted to take and keep Henry's estate under Henry's will and Jim's contract to make a will as shown not be enforced. Exclusion of the parol testimony establishing the agreement would result in the application of the statute of frauds to perpetuate a fraud contrary to equity and good conscience. The 6th point must be overruled. Each of appellants'

other points of error have been examined but none show reversible error and all should be overruled.

As before stated I am of the opinion that the judgment of the trial court should be affirmed, and concur in any opinion which may be filed affirming the judgment of the trial court.

FANNING, Justice (concurring).

This case was assigned in regular order to Associate Justice DAVIS and he has filed a written opinion reaching the conclusion that the judgment of the trial court should be affirmed. Next Chief Justice CHADICK filed a written opinion wherein he reached the conclusion that the judgment of the trial court should be affirmed. After extensive study of this case it is also my conclusion that the judgment of the trial court should be affirmed and I file herewith this as my separate opinion setting out my views upon the cause as follows:

Appellants by their 6th point contend that recovery by appellees is barred by the statute of frauds since the bulk of the property of J. E. Sexton was real estate. Appellants by their points 1 through 5, challenge the judgment of the trial court on the grounds of (1) "no evidence", (2) "insufficient evidence", that (3) "the verdict and judgment are against the overwhelming weight and preponderance of the evidence", (4) that "the submission of special issue No. 1 and the answer thereto are not supported by the clear and convincing, full and satisfactory evidence required by law", and (5) that there was "no evidence to support the submission of special issue No. 2 nor the answer thereto".

The wills of W. H. Sexton and J. E. Sexton have already been set out in the opinion of Justice DAVIS. The opinions of Chief Justice CHADICK and Associate Justice DAVIS also refer to the materially essential evidence in this cause and I deem it unnecessary to re-summarize the evidence.

Some of the leading Texas cases on mutual wills are as follows: Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395, wr. ref.; Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1; Weidner v. Crowther, Tex., 301 S.W.2d 621; Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588; Hamilton v. Hamilton, 154 Tex. 511, 280 S.W.2d 588; Pullen v. Russ, Tex.Civ.App., 226 S.W.2d 876; Sherman v. Goodson's Heirs, Tex. Civ.App., 219 S.W. 839, wr. ref.; Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, wr. ref.; McWhorter v. Humphreys, Tex. Civ.App., 161 S.W.2d 304, wr. ref., w. o. m.; and Johnson v. Durst, Tex.Civ.App., 115 S.W.2d 1000, wr. dis.

The case of Weidner v. Crowther, supra, (301 S.W.2d 621, 624) opinion by Justice Calvert, contains an excellent discussion of various phases of the law with respect to mutual wills, and therein it was stated:

"One party to a mutual will may not render it unenforceable after the death of the other party by declaring a revocation thereof and declining to take benefits under it. *Death of one of the parties to a mutual will, or mutual wills, will put effective revocation thereof beyond the legal right and power of the survivor.* As long ago as 1769 Lord Chancellor Camden announced the foregoing rule, by way of dictum, in Dufour v. Pereira, 1 Dickens 419. In that case the surviving widow probated a mutual will as the will of her deceased husband and took benefits under it. The question was whether it was in the power of the survivor to revoke the mutual will. On the power of revocation Lord Camden said: ' "But I cannot be of the opinion that either of them could, during their joint lives, do it secretly; or that, after the death of either, it could be done by the survivor by another will" '. * * *

"At the heart of a mutual will lies a contract of the parties. It would be manifestly unjust to permit the surviving party to the contract to disavow it and its obligations, as those obligations are incorporated in their will, after the other party has fully performed by abiding by it until his ability to revise it has been terminated by death.

\* \* \* \* \* \*

*"We recognize that a will is ambulatory in character and that the surviving party to a mutual will may revoke it, but effective revocation will be prevented by a court of equity.* In Murphy v. Slaton, 154 Tex. 35, 273 S.W.2d 588, 593, in dealing with the problem we said: 'Annie E. Murphy (the survivor) technically could have revoked her will, but the beneficiaries under the joint (and mutual) will, as probated at the death of B. H. Murphy, would have had a cause of action to come into court with an equitable proceeding and receive their rights under such probated joint will.' *Some courts have said that the survivor and those claiming under the survivor would be estopped to assert a right to have the property which is disposed of by the will pass otherwise than according to its terms. Some have said that the property of the survivor would be impressed with a trust in favor of the beneficiaries under the will. Others have said, where there was an acceptance of benefits, that the survivor had 'elected' to take under the will and had thereby ratified and confirmed it.* One writer has suggested that the true basis on which the courts act is in requiring specific performance of the contract evidenced by the will. The Doctrinal Relationships of Concerted Wills and Contract, by W. F. Young, Jr., 29 T.L.R. 439. *In any event, a court of equity will afford relief to one who seeks enforcement of the terms of a mutual will, after the death of one of the parties thereto, when the terms of the will are not themselves inequitable."* (Emphasis added.)

The case of Pullen v. Russ, Tex.Civ. App., 226 S.W.2d 876, 879, wr. ref., n. r. e., involved the situation where spouses simultaneously executed separate wills containing the same provisions but such wills did not state that they were mutual and reciprocal and parol evidence was admitted to show that such wills were made pursuant to the spouses' agreement to dispose of their property as provided in such wills. The appellate court in affirming the judgment of the trial court stated:

"We overrule appellees' contention that the two wills are sufficient, by themselves, to show that they were executed pursuant to such a contract. Except for the seventh paragraph, which we shall discuss, the wills themselves show no more than the facts that they are similar and were executed at the same time. Except for the seventh paragraph, the wills do not respectively purport to dispose of the entire estate of both parties, but only that of the testator, nor does either will purport to dispose of the estate held by the survivor at his death. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1; Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, writ ref.; Curtis v. Aycock, Tex.Civ. App., 179 S.W.2d 843, writ ref., w. o. m. \* \* \* The recital that the other spouse was executing a similar will did not make the wills contractual, because it was no more than the statement of a fact which, under the decided cases, was not enough to make the wills contractual.

"But the similarity of the wills and the fact of execution at the same time and place and before the same witnesses are facts which may be considered along with other evidence in determining whether or not the wills were executed pursuant to an agree-

ment. Also, evidence of declarations of the testator (in this case Mr. Russ) is admissible to prove such fact. Nye v. Bradford, supra, and other authorities there cited, including particularly Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910. McClure v. Bailey, Tex.Civ.App., 209 S.W.2d 671, writ ref., n. r. e., cited by appellees cannot be accepted as authority for the proposition that declarations of the testator are incompetent to prove that the wills were executed pursuant to an agreement, in view of the pronouncement in Nye v. Bradford.

*"We think that the parol testimony, coupled with the provisions of the wills, they being consistent with the theory that the wills were executed pursuant to an agreement between Mr. and Mrs. Russ to dispose of their property in the manner therein set out, is sufficient to support the verdict.* (Emphasis added.) * * *

"As announced in the cases above cited and in many others, the proof must be clear and convincing in order to justify the invocation of the equitable remedies herein pursued. The jury were the judges of the credibility of the witnesses. Accepting their stories as true, as we must, and considering the pattern of the two wills and the recitals in them, we hold that the evidence is sufficient to meet the applicable test."

The Supreme Court of Texas in the case of Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 167, stated:

" * * * One who relies upon a will as a contract has the burden of proving that the will is contractual as well as testamentary in character. *Proof may be made by the provisions of the will itself or by competent witnesses who testify to the agreement; and evidence as to declarations of the promisor, relations or conduct of the* parties *and other facts and circumstances, that tend to prove that an agreement was made, are admissible.* Moore v. Moore, Tex.Civ.App., 198 S.W. 659, application for writ of error refused; Williams v. Williams, 123 Va. 643, 96 S.E. 749; Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910; Page on the Law of Wills, 3d Ed., vol. 4, pp. 927–933, §§ 1753, 1754; Alexander's Commentaries on Wills, vol. 3, pp. 107, 108, § 92; 69 C.J. pp. 1303–1305, §§ 2729–2731; Note 102 A.L.R. pp. 491, 494, 495." (Emphasis added.)

In Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, 368, wr. ref., it was stated:

"Evidence otherwise competent, either direct or circumstantial, was admissible to show whether said wills were executed pursuant to an agreement or understanding between the testators. * * * That oral contracts to make mutual or reciprocal wills can be shown, and that such contracts can be enforced in Texas after one of the parties has died and the will has been probated, is now well settled."

· I do not find that the Statute of Frauds was specifically referred to in either the Pullen v. Russ, Wagnon v. Wagnon or Nye v. Bradford cases but the language used in the opinions holding parol evidence admissible in such cases is rather sweeping.

The case of Larrabee v. Porter, Tex. Civ.App., 166 S.W. 395, 402, wr. ref., is a leading case on mutual wills and has been cited many times. It was cited by the Supreme Court of Texas in Nye v. Bradford, supra, and in Weidner v. Cowther, supra, although it was not specifically cited on the Statute of Frauds. In Larrabee v. Porter, supra, a question with reference to the Statute of Frauds was discussed as follows:

"Nor is the statute of frauds available to appellant, because, first, that defense was waived, never having been

invoked in any manner in the trial court. *Besides, this will and the other instruments executed with it and as parts of the same transaction showed a contract in writing, or that they were the consummation of the previous parol agreement to make them; and the undisputed evidence shows such part performance as takes the case out of the statute.*" (Emphasis added.)

The italicized portion from Larrabee v. Porter, supra, is dictum. Such dictum however supports the view that the statute of frauds is inapplicable to the situation in the case at bar. Also in this connection see 20-A, Tex.Jur., Sec. 136, pages 414–415, wherein it is stated:

"In General—Fully Executed Agreement.—A fully executed agreement, as distinguished from one which is still executory, is not affected by the statute of frauds. Thus, where there has been complete performance of an agreement for the sale and purchase of land the legal relations of the parties are no longer affected by the statute.

"An oral contract for the sale of land is not unlawful, and when the contract has been executed, the statute of frauds cannot be invoked to undo that which has been consummated. *Further, the execution of a joint and mutual will and a joint and mutual deed by a husband and wife in consummation of a previous oral agreement between them, removes the oral agreement from the operation of the statute of frauds.* (Emphasis added.)

The case of Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216, and other cases cited by appellants concerning oral contracts to make a will are not applicable to the situation here *where written wills were actually executed in pursuance to and in essential conformity with an oral contract between W. H. Sexton and J. E. Sexton.*

The oral contract between W. H. Sexton and J. E. Sexton to make mutual wills to themselves and providing certain provisions in favor of their nieces, appellees herein, including the agreement that at their deaths the property would go to their nieces, appellees herein, was in essential conformity with the two written wills when considered in the light of the law applicable to lapsed bequests and devises falling within a general residuary clause as outlined in the case of Kuehn v. Bremer, Tex.Civ.App., 132 S.W.2d 295, 296, wr. ref.

In the Kuehn v. Bremer case, supra, the deceased gave his wife all the personal property of which he should die seized and possessed of, and in addition, gave her a life estate in his real property with remainder to his nephew. In addition to certain specific sums of money, the testator then had the following residuary clause: "All the remainder of my estate, including all my real estate subject to said life estate to my wife—I give, devise and bequeath to my nephew, William A. Bremer, in fee simple, I desire and direct however that it shall be charged with a lien securing the payment by him of the bequest of the money hereinbefore made and specified by me." The testator's wife predeceased him and the heirs of the deceased claimed in the trial of the cause that due to the wife having predeceased him that everything left to her went by descent and distribution and the nephew was not entitled to all of the deceased's property other than the specific money bequest. In rejecting this contention and in holding that all of the estate, both real and personal, passed to the nephew under the residuary clause, other than the specific money bequest, the Court stated as follows:

"The rule is recognized and is supported by the weight of authorities that in the absence of a statute upon the question, under a will containing a general residuary clause, a bequest of property, which, valid when made, fails for any reason, such as the death of the legatee prior to the death of the

testator, becomes a lapsed legacy and falls into the residuary clause and passes to the residuary legatee, unless a different intention is expressed in the will. Bittner v. Bittner, Tex.Com.App., 45 S.W.2d 148, par. 2; 9 Texas Law Review, pp. 265 to 272. Yet the rule announced in Moss v. Helsley, 60 Tex. 426, and Bittner v. Bittner, Tex.Com. App., 45 S.W.2d 148, pars. 3 to 5, inclusive, is that the intention of the testator, when ascertained from the entire will, will control. It is also a well recognized rule that unless a contrary intention is plainly expressed or necessarily implied, *it will be presumed from the mere fact of making the will, that the testator intended to dispose of his entire estate, and that he did not intend to die intestate as to the whole or any part of his property. * * ** 

"With the above rules in mind, we approach a determination of the question of whether it was the intention of August Spitzer that his personal property should become a part of the residuary of his estate in event his wife predeceased him and to pass to William A. Bremer under the provisions of section 5.

"All the words employed in the construction of the will were used for the one purpose of expressing August Spitzer's plans for the distribution of his estate on his death, and they should be interpreted in the sense in which they were used, in order that the scheme he had in mind for the distribution of his estate may be enforced, it being lawful and consistent with public policy. Calvery v. Calvery, 122 Tex. 204, 55 S.W.2d 527; Adams v. Maris, Tex.Com.App., 213 S.W. 622, Haupt v. Michaelis, Tex.Com.App., 231 S.W. 706; Frame v. Whitaker, 120 Tex. 53, 36 S.W.2d 149; Johnson v. Goldstein, Tex.Com.App., 215 S.W. 840.

\* \* \* \* \* \*

" * * * Those provisions are consistent with the contention that the entire estate of August Spitzer passed under the will and inconsistent with the contention that he died intestate as to his personal estate. * * *

" * * * The use of the words 'all,' 'my estate,' and 'including all my real estate' are significant, and it is to be noted that *he did not say 'the remainder of my real estate,' but said 'all the remainder of my estate.' "* (Emphasis added.)

W. H. Sexton and J. E. Sexton did not have any lineal descendants and there was no statute which would prevent the lapse of the devises and bequests made to W. H. Sexton by the will of J. E. Sexton since W. H. Sexton died prior to J. E. Sexton.

As above stated W. H. Sexton died first without making any other wills than the will in question here and his property went in accordance with that will. I think it must be presumed under the facts in this case that J. E. Sexton knew on November 23, 1948, when he executed his will in question here, that if he outlived his brother W. H. Sexton (which event actually occurred) then the bequests and devises to his brother W. H. Sexton, set forth in paragraphs 2 and 3 of his will would lapse and that under the law (which was consistent with and in conformity with his oral agreement under the evidence in the record) due to the general residuary clause contained in paragraph 4 of his will, the lapsed devises and bequests to his brother W. H. Sexton, would pass to his four nieces, the appellees herein, which residuary clause would cover all the property he owned or might be interested in, at his death, in fee simple, including both real and personal property.

While I have found no Texas case specifically holding whether or not the statute of frauds is applicable to a situation such as in the case at bar, it is my best judgment that in view of the dictum above quoted in the Larrabee v. Porter case, and in view of the above quoted language in the Nye v. Bradford, Wagnon v. Wagnon

and Pullen v. Russ cases, we should hold that the statute of frauds is not applicable to the situation here involved. Also as stated by Chief Justice CHADICK in his opinion this holding seems to be in the current of authority as pointed out in 169 A.L. R. page 43, Section 3. I concur in the overruling of appellants' sixth point.

I have carefully reviewed the evidence in this cause and it is my considered opinion that there was evidence of probative force to support the findings of the jury to special issue No. 2 and to support the judgment in favor of appellees, that the evidence was sufficient to support the verdict and the judgment, and that the submission of Special Issue No. 1 and the answer thereto were supported by the clear and convincing, full and satisfactory evidence required by law. In this connection see Pullen v. Russ, supra, (226 S.W.2d 876), and Hamilton v. Hamilton, 154 Tex. 511, 280 S.W.2d 588.

I have also carefully considered all of the evidence in the case in the manner and under the rules laid down by the Supreme Court of Texas in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and have reached the conclusion that the verdict and judgment in favor of appellees herein is not so contrary to the overwhelming weight and preponderance of all the evidence as to be clearly wrong and manifestly unjust.

I concur in the overruling of appellants' points 1 through 5, inclusive.

It is my further view that appellants' remaining points do not present error and I concur in overruling same.

I concur in the affirmance of the judgment of the trial court. Since all the members of the court agree that the judgment of the trial court should be affirmed, it follows that the judgment of the trial court is affirmed.