**STATE of Texas, Appellant,**

v.

**TEXAS BITULITHIC COMPANY,**
**Appellee.**

**No. 11755.**

Court of Civil Appeals of Texas, Austin.

May 6, 1970.

Rehearing Denied May 20, 1970.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., J. C. Davis and John H. Banks, Asst. Attys. Gen., for appellant.

Ritchie, Ritchie & Crosland, J. W. Crosland, Dallas, for appellee.

PHILLIPS, Chief Justice.

On July 5, 1962 a contract was entered into between Appellant and Appellee for the construction of 8.018 miles of Interstate Highway 20 in Van Zandt County, Texas.

Appellee began construction of the highway on September 24, 1962 and continued until it was notified by letter from Appellant dated February 1, 1963 to temporarily suspend work on the project. This notifi-

cation was in accordance with Item 8.4 of the Standard Specifications contract. The suspension was called for because of the difficulty which had arisen with respect to the soil cement base during freezing weather.

At the time Appellant notified Appellee to temporarily cease construction, approximately 2½ to 3 miles had been paved. Approximately 7 miles of the soil cement base in question had been laid with 3% cement [1] which was the minimum amount called for in the specifications. Under the contract, it was the Highway Department that determined this percentage.

At the time Appellant notified Appellee to cease operations a portion of the soil cement base containing the 3% cement mixture had "puffed up," apparently due to the freezing temperatures.

After Appellee stopped work on this project on February 6, 1963, it moved a portion of its paving equipment to another paving project in Dallas and this equipment was not returned to the project in question until March 9 or 10 of the same year.

On returning the equipment to the job, Appellant notified Appellee that it continue work on the soil cement base of adjoining access roads that contained a six percent cement mix.

The trial court awarded damages to Appellee for expense of its idle equipment, moving expense, salaries and living expenses of supervisory personnel, maintenance of its field office, on the theory that the delay was caused by an inadequate design by Appellant of the soil cement base containing a minimum of three percent.

It is from this judgment that Appellant has perfected its appeal to this Court.

We affirm.

Appellant is before us on two points of error, the first being that of the trial court in holding that the design by Appellant constituted an inadequate design of the soil cement base.

We overrule this point.

During the progress of the work under the contract, Appellant did several things which are wholly inconsistent and irreconcilable with the position Appellant is now taking. Appellant in its brief takes the position that the puffiness or blistering of portions of the soil cement base which had been constructed on a substantial portion of the freeway lanes was caused by freezing and not because of an inadequate design of the soil cement mix. This position is inconsistent with the extra work order and the $3,874.31 payment hereinafter mentioned. Furthermore, there is absolutely no testimony or other evidence in the record to sustain Appellant's position, although two of the engineers for the State Highway Department having supervision of this project, testified at length upon the trial of this case.

The contract provides that the Contractor shall accept the compensation provided in the contract in full payment for any loss or damages which may arise from the action of the elements, or from any unforeseen difficulties which may be encountered during the prosecution of the work, until the final acceptance by the Engineer, except where there is conclusive evidence that such damage is due to inadequate design and not to improper prosecution of the work. Pursuant to this provision, had the damage to the soil cement base been caused by freezing (action of the elements), Appellee would not have been entitled to any compensation for reworking the damaged areas. Nevertheless, Appellant issued Appellee an extra work order to re-

---

1. Specification data reads as follows:
   "272: The 6" Soil Cement Base (Central Mix) on the Throughways, shall have a 175 P.S.I. minimum unconfined 7 day compressive strength and shall contain a minimum of 3% Portland Cement. All other Soil Cement Base (Central Mix) used on this project shall contain a minimum of 6% Portland Cement based on the dry weight of the soil. All soil cement shall be centrally mixed."

pair the damaged soil cement base at an estimated cost of $9,400 and thereafter paid Appellee $3,874.31, said amount being the actual cost of said repairs. The only justification for making this payment is that Appellant recognized its obligation under the contract to pay Appellee for damages due to inadequate design.

Further evidence of the inadequate design of the soil cement base on the freeway lanes is that the laboratory test reports which were made by Appellant during the period January 22, 1963 to February 5, 1963 showed that the soil material which was being used for the soil cement base, when mixed with 3% Portland Cement, would not provide the specified compressive strength of 175 pounds per square inch. One of these reports showed the compressive strength on six different samples with the 3% mix to be 93.0, 93.1, 97.8, 114.3, 110.1 and 108.8 pounds per square inch. Another of these reports with the same 3% mix showed the compressive strength of three different samples to be 171.1, 151.3 and 161.9 pounds per square inch, while with a mix of 4% Portland Cement each of three other samples were reported to have a compressive strength of 191.4, 200.4 and 159.0 pounds per square inch. These test reports resulted in Appellant's changing the mix design of the soil cement mix for the freeway lanes from 3% to 4% Portland Cement before Appellee was permitted to resume construction of the soil cement base on the freeway lanes. These tests and others also ultimately caused Appellant to change the source of the soil material to another pit because the soil material from the original pit had become unsuitable. This change of the mix design and the change from one pit to another certainly would not have been made by Appellant had the material and mix then been adequate, for to make such changes Appellant had to pay for the increased cement content and for Appellant's move to the new pit.

Further evidence of the inadequate design of the soil cement mix for the soil ce-ment base on the freeway lanes is that while puffing or blistering was observed on that base after freezing temperatures, the soil cement base which had been constructed on the frontage roads with a 6% cement mix was not damaged by the same freezing temperatures.

Before it is entitled to recovery under the contract Appellee must be shown by conclusive evidence that the damages sustained by Appellee were due to inadequate design and not to improper prosecution of the work. In the case of McWhorter v. Humphreys et al., 161 S.W.2d 304 (Tex. Civ.App., Texarkana, 1942, writ ref'd w. o. m.), in speaking on conclusive evidence the Court said:

> " * * * As stated in Western Assur. Co. v. Busch, Tex.Civ.App., 203 S. W. 460, 'The test as to the conclusiveness of the evidence is, Could it reasonably be supposed that the minds of unprejudiced men of ordinary intelligence might differ about it, either as to the weight to be given to the testimony or to the deduction drawn therefrom?' "

We hold that Appellee has met this burden.

Appellant's second point of error is that of the trial court in failing to hold that Appellant, under the terms of the written contract, had the right to control materials used in the construction of the highway project.

We overrule this point.

■ We hold that this finding is unnecessary to uphold the judgment before us.

The contract between the parties provided as follows:

> "9.2. Scope of Payment. The Contractor shall accept the compensation, as provided in the contract, in full payment * * * for any loss or damage which may arise * * *, except where there is conclusive evidence that such damage

is due to inadequate design and not to improper prosecution of the work; * * *."

To deny Appellee recovery, the Court would have had to ignore the contract.

The judgment of the trial court is affirmed.

Affirmed.