Henry G. DAVENPORT et al.,
Appellants,

v.

COMMISSIONERS' COURT OF DENTON COUNTY, Texas, Appellees.

No. 8482.

Court of Civil Appeals of Texas,
Texarkana.

July 26, 1977.

Rehearing Denied Nov. 1, 1977.

L. A. Nelson, Nelson & Lewis, Denton, Michael J. Whitten, Gray, Whitten & Loveless, Denton, for appellants.

William P. Phillips, Jr., Coleman, Phillips & White, Denton, John E. Lawhon, County Atty., Denton, for appellees.

CHADICK, Chief Justice.

This is an election contest case. The Commissioners' Court of Denton County, Texas, canvassed the returns of a local option election held in the incorporated City of Denton, Texas, and declared a majority of the qualified voters within the City voted "For the legal sale of Beer and Wine" and entered orders appropriate to the declaration and findings associated therewith. The affirmative vote was found to be 4,832 and the negative vote 4,250. After the official result of the election was declared by the Commissioners' Court, an election contest was instituted in the court below and judgment therein denied the contestants relief and upheld the validity of the election.

The trial judge filed findings of fact and conclusions of law pursuant to Tex.R.Civ.P. 296, et seq. A conclusion reached was that the contestants "wholly failed to invoke the jurisdiction" of the trial court. This conclusion appears to have been based upon two grounds. These were that the contestants in this proceeding failed to name as contestee the county attorney of Denton County, Texas, and that no evidence was introduced tending to prove that any contestee was given the notice of contest required by Tex. Election Code Ann. art. 9.03 (1967).

■ The written notice and statement by which a contest of a local option election is initiated was given to each member of the Commissioners' Court as a contestee. The Election Code provides such notice and statement may be given to ". . . the officer who declared the official result of said election, or one of them, as the case may be, . . . ." Tex.Election Code Ann. art. 9.31 (1967). Jurisdiction did not fail for want of notice and a statement served upon statutorily designated contestees, that is, the officers composing the

Commissioners' Court which declared the official result of the election. See *Hooker v. Foster,* 117 Tex. 237, 1 S.W.2d 276 (Tex. Comm'n App.1928, opinion adopted); *Jordan v. Overstreet,* 352 S.W.2d 296 (Tex.Civ. App. Beaumont 1961, no writ); *Sanford v. Commissioners' Court,* 170 S.W.2d 846 (Tex. Civ.App. Dallas 1943, no writ); *Maddox v. Commissioners Court of Palo Pinto County,* 222 S.W.2d 475 (Tex.Civ.App. Eastland 1949, no writ); *McCasland v. Steele,* 496 S.W.2d 937 (Tex.Civ.App. Waco 1973, no writ).

■ Jurisdiction could not be properly denied on the second ground either. A copy of the contestants' petition accompanied the citation served upon the contestees by the sheriff of Denton County. The adequacy of the petition and citation as notice and statement required by art. 9.03 is not questioned. It was established in *Messer v. Cross,* 26 Tex.Civ.App. 34, 63 S.W. 169 (1901, no writ), that a petition and citation containing the elements of notice and grounds of contest required by art. 9.03 are substantial compliance with the notice and statement requirements of the article. See also *Sanford v. Commissioners' Court,* supra, and authorities therein cited. The contestees point out that the contestants did not introduce the petition and citation into evidence. Such omission is not an incurable lapse as formal introduction was not absolutely necessary. A trial court takes notice of the record and its contents in the proceedings before it. 1 McCormick & Ray, Texas Law of Evidence, Sec. 185 (2d ed. 1956).

■ The contestants' third point of error is understood and interpreted to assert that the evidence in the record establishes conclusively that absentee ballots used in the election were improperly worded and void. Contestants argue that the clear and undisputed evidence is that 809 absentee ballots were cast, that the wording of the negative proposition on each such ballot failed to comply with the strict and mandatory language prescribed therefor by Tex.Penal Code Aux.Laws art. 666–35 and 666–40

(1974), that the qualified voters who cast such void ballots were denied the privilege of voting. And in this connection, contestants contend that if such voters had been allowed to cast valid ballots their votes were sufficient in number to have materially changed the result of the election.

Contestees counter the point and insist, first, that complaint is groundless because contestants failed to prove the form and content of the absentee ballots actually cast; and second, contestees insist that under the terms of Tex.Penal Code Aux.Laws art. 666–40a (1974) the final outcome of the election would not be affected if all absentee ballots were found to be void.

The posture of the parties requires determination of whether the record shows as a matter of law the form and content of the absentee ballots actually cast violated the strict and mandatory language prescribed therefor, and, second, whether the outcome of the election would be affected if all the absentee ballots were void.

The county clerk testified that Exhibits No. 7 and No. 8 were samples of the ballots from two packets of 500 ballots each used in the absentee voting box. On voir dire examination by the contestees the clerk said that the ballots came from the printer in packets of 500 and that she examined and took as a sample the top ballot in each of the two packets before setting aside the packets for use at the absentee ballot box. She did not examine the ballots that were actually cast and could not say what their form and content might have been or that all printed ballots in the packets were identical with the samples in evidence. The trial judge found "That Contestants wholly failed to establish by any admissible evidence that absentee ballots which were used were illegal or improperly worded."

The sample ballots in evidence contained an instruction to the voter in English and Spanish printed on its face, as well as the issue the ballot submitted to the voters. The instruction and issue in the English language were as follows:

"INSTRUCTION: Scratch or mark out one statement so that the one remaining indicates the way you wish to vote."

Such instruction was followed by the issue in its affirmative and negative aspect, viz:

"FOR THE LEGAL SALE OF BEER AND WINE"

"AGAINST THE SALE OF BEER AND WINE"

The governing statute, Tex.Penal Code Aux.Laws art. 666–40 (1974), states that in a local option election such as this the issue to be submitted to the voter shall be:

"For the legal sale of beer and wine" and

"Against the legal sale of beer and wine"

On comparison it is apparent that the sample ballot omitted the word "legal" from the statutorily dictated statement of the negative issue. Tex.Penal Code Aux.Laws art. 666–35 (1974) commands that:

"(b) Notwithstanding any provision of the general election laws, the issue to be voted on shall be printed on the ballot in the exact language stated in Section 40 of this Act, and the ballot shall be marked as provided herein."

*McGraw v. Newby*, 496 S.W.2d 250 (Tex. Civ.App. Beaumont 1973, no writ), a case growing out of an election where off premise consumption of alcoholic beverages was at issue, held that it render a ballot void to omit the word "legal" from the negative side of the issue. The Beaumont court relied upon * *Smith v. Counts*, 282 S.W.2d 422 (Tex.Civ.App. El Paso 1955, no writ), a case concerned with a defective petition for a local option election. The El Paso court's opinion showed reliance was placed upon the reasoning and conclusions expressed in several prior attorney general opinions and quoted with approval from one of those opinions wherein it was said: ". . . specific statutory wording must be used in the petition, in the election order and *on the ballots,* in order to have a valid election." (Emphasis supplied.)

The explicit provisions of art. 666–35, the attorney general's interpretation referred

---

* Opinion by Chief Justice Robert W. Hamilton, later a justice of the Texas Supreme Court.

to and the decided cases are persuasive that omission of the word "legal" from the negative side of the issue would render void any ballot wherein such omission appeared that was cast in the absentee ballot box. The next and more difficult task is to determine whether the omission occurred in the absentee ballots actually cast.

The contestees assert that the evidence only shows that two uncast ballots, that is, Exhibits No. 7 and No. 8, failed to comply with statutory precepts. The clerk testified that she did not examine the ballots actually cast or those in the packets under the top or sample ballot and could not say what was printed on the other ballots in each packet. There is no testimony other than the clerk's bearing upon the issue, though the record does show the county clerk was designated absentee voting clerk in the order calling the election. Contestants insist that the clerk's testimony shows as a matter of law that all votes cast in the absentee ballot box are deficient in the particular shown by the sample ballot. For evidence to establish a fact conclusively it must be uncontradicted and of such nature that reasonable minds cannot differ with the conclusion to be drawn therefrom. *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696 (1914); *Ross v. Green,* 135 Tex. 103, 139 S.W.2d 565 (1940); *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898). The question for this court is, would the minds of unprejudiced men of ordinary intelligence differ either about the weight to be given to the evidence of the form and content of the absentee ballots or the deduction to be drawn from it; if not, the form and content of such ballots are established as a matter of law. *Western Assur. Co. of Toronto, Canada v. Busch,* 203 S.W. 460 (Tex.Civ.App. Austin 1918, no writ); *McWhorter v. Humphreys,* 161 S.W.2d 304 (Tex.Civ.App. Texarkana 1941, writ ref'd w. o. m.); *State v. Texas Bitulithic Company,* 453 S.W.2d 866 (Tex.Civ.App. Austin 1970, writ ref'd n. r. e).

It is an undisputed fact that the clerk was an election official in charge of election supplies and the official printed ballots used in the absentee box. The two sample ballots taken from separate packets are identical and appear to have been taken at random. Nothing in the record suggests the printer's packets contained ballots unlike the samples. The processes of the court were at the call of either set of parties to develop the exact form and content of the ballot actually cast and both overlooked or chose not to do so. In the context of the meager evidence it is concluded that the minds of reasonable men would agree that all ballots in the two packets were the same as the samples in evidence.

The 809 ballots cast in the absentee ballot box were void and the voters casting such ballots were therefore disenfranchised. However, the contestants argue that the affirmative proposition carried in the absentee ballot box and that if all the absentee ballots were thrown out the result of the election would not be changed. The proposal argued gives effect to ballots that were absolutely void. In contemplation of law those casting the invalid ballots in the absentee ballot box did not vote. To tally pro or con the void votes for the purpose of determining whether or not the absentee ballots would have materially affected the election would be to give effect to void ballots and to ignore the statutory command that the issue be presented in a specified way.

It must be concluded that qualified voters were denied the privilege of casting valid ballots in the election in such numbers that had they been allowed to vote their ballots might have materially changed the result of the election. Contestants' point of error number 3 is sustained.

Other points of error will not be discussed as the conclusion reached on point of error number 3 will require reversal and rendition of the judgment of the trial court. Accordingly, the judgment of the trial court is reversed and judgment is rendered that the election held on April 3, 1976, is void and of no legal import, force or effect.